SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Donald Bessler, a married man, | ) Case No.: 2:19 CV 04610-PHX- MTL |
|---|---|
| Plaintiff, | ) **PLAINTIFF'S MOTION FOR** |
| v. | ) **PARTIAL SUMMARY JUDGMENT** |
| | ) **RE: AFFIRMATIVE DEFENSE OF** |
| City of Tempe, an Arizona municipal corporation, | ) **MITIGATION OF DAMAGES** |
| Defendant. | ) |

Plaintiff, by and through counsel, requests that the Court grant summary judgment on Defendant City of Tempe's affirmative defense of Mitigation of Damages. The Court should grant this Motion because Plaintiff was re-employed at a substantially equivalent job with the City of Glendale just twenty-five (25) days after Defendant terminated his employment on November 2, 2018 and Plaintiff had no further legal duty to continue a job search. The attached Memorandum of Points and Authorities and relevant facts submitted herewith support the granting of Plaintiff's Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. Bessler Gets Reemployed Within 25 Days of Tempe's Retaliatory Termination of His Employment.

In the present action, Plaintiff Donald Bessler ("Plaintiff" or "Bessler") has alleged that Defendant City of Tempe retaliated against him in violation of the Age Discrimination of Employment Act of 1967, 29 U.S.C.§621 *et seq.* ("ADEA") after it learned he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and subsequently terminated his employment on October 19, 2018, effective November 2, 2018. In the Answer to the Second Amended Complaint, Defendant alleged Plaintiff failed to mitigate his damages as an affirmative defense. (See Doc. 16).

Bessler was employed by the Defendant City of Tempe as its Public Works Director for eight (8) years from about August 2, 2010 up to his termination on November 2, 2018. (Ex. 1). After learning his employment was going to be terminated, Bessler submitted eleven (11) applications for positions and participated in five (5) interviews in the seven week period between October 9 - November 27, 2018. (*Id.*; Ex. 2, p. 5). Mr. Bessler was provided post interview feedback from potential employers representatives that the negative publicity promulgated by comments made in the open media about Mr. Bessler by the City of Tempe, had and would likely continue to spoil his efforts to be selected for a position. (Ex. 1; Ex. 7, p. 123). He inquired about one position as Director of Public Works in New Glarus, Wisconsin near where his wife's family resided, but the position was filled and Bessler is not interested in relocating out of Arizona. (Ex. 1).

On November 27, 2018, a mere **twenty-five (25)** days after the last day of his employment with Defendant, Bessler was tendered a form boilerplate Temporary ("AT-WILL") Employment Contract by the City of Glendale.[1] (Ex. 3). On December 18, 2018, Bessler met with Mr. Anaradian of the City of Glendale and it was agreed that Bessler would

---

[1] While employed with Defendant Tempe, Bessler was also an "at-will" employee.

commence full time temporary employment on January 14, 2019. (Ex. 1). On that date, Bessler and the City of Glendale signed a Temporary Employment Agreement with the City of Glendale for the period January 14, 2019 - October 18, 2019. (Ex. 4). The Temporary Employment has been renewed twice – from December 21, 2019 - December 21, 20 and July 1, 2020 - June 30, 2021. (Ex. 5). Bessler will have been employed by the City of Glendale for 2.5 years by the expiration of the latest renewal on June 30, 2021. The Agreement may be again renewed as Bessler was appointed as the Chief Capital Improvement Officer, also serving as the Acting Director of Engineering in July 2019 with day-to-day responsibility to supervise the City of Glendale's Engineering Department. (Ex. 1). In summary, Bessler found substantially equivalent employment just twenty-five (25) days after being terminated by the City of Tempe and commenced that employment on January 14, 2019.

### B. The Opinions of Defendant's Vocational Expert, Bradford H. Taft.

Bradford H. Taft was retained by Defendant in late March 2020 to perform a vocational assessment/earning capacity analysis. (Ex. 2, p. 2). Mr. Taft conducted an analysis to assess whether or not the job search Bessler performed following his termination rose to the level of a reasonable and diligent job search and whether there were comparable jobs in the labor market. Mr. Taft's report describes his analysis and conclusions. (*Id.*) Mr. Taft did not request or conduct an interview of Mr. Bessler. (Ex. 6, p. 26).

Mr. Taft's report states that Mr. Bessler's hourly final pay at the City of Tempe was $87.08 per hour for an annualized salary of $181,138 and that his hourly rate of pay at the City of Glendale was $75.00 for an annualized salary of $156,000, which is $25,000 less or 86% of his prior City of Tempe salary. (Ex. 2, p. 4; Ex. 6, p. 28-30). As to Bessler's initial job search, Mr. Taft testified that Bessler identified positions that were posted by both government entities, as well as consulting firms and believed that was reasonable during the initial stage of his job search. (Ex 6, p. 33). As to Bessler's job search which resulted in his City of Glendale employment, Mr. Taft states: "Although he did not indicate in terms of the documentation a large number of positions that he applied for, he certainly was

effective in gaining interviews, as well as receiving a job offer in the time period when he left City of Tempe to when he accepted the position with the City of Glendale." (*Id.*)  In his deposition, Mr. Taft further testified:

> Q. Do you know what efforts Mr. Bessler took to identify open positions through various sources, including internet job sites?
> A. Yes.
> Q. What did he do?
> A. He identified positions that were posted by both government entities, as well as consulting firms.
> Q. Do you think that was **reasonable** on his behalf?
> A. During the initial stage of his job search, yes.

(Emphasis added; *Id.*)

As reflected by his file, Mr. Taft had a third-party company, Forensic Job Stats, do a database search which revealed 4,431 job advertisements during the period of November 1, 2018 to April 10, 2020, in Arizona, California, Colorado and New Mexico with seven occupational categories. (Ex. 2, p. 6, 7). A review of the database reveals that approximately 744 of the listed positions were in Arizona and approximately 3,687 were out of state. Tellingly, nowhere in his report does Mr. Taft identify or list specific jobs or job advertisements for which he believed Bessler should have submitted an application between the time period November 2, 2018 to December 18, 2018 when he met with the City of Glendale and his start date was agreed upon. (Ex. 6, p. 42). Moreover, although the database search includes thousands of advertisements for positions in California, Colorado and New Mexico, as set forth below, the law is clear that Bessler was not required to relocate to another state as part of his mitigation obligation.

With respect to his opinion on mitigation of damages, it is Mr. Taft's opinion that Bessler had the opportunity to continue his career by conducting a job search to identify and be considered for positions that he would be qualified for that would pay in the range at, or above the range, in which he was making at the City of Tempe. (Ex. 6, p. 53). He further opined: "Therefore, instead of ending his job search and accepting the full-time temporary

position as Chief Officer, Capital Programs with the City of Glendale, which pays an annualized salary of $156,000 plus benefits, I opined that Mr. Bessler had the opportunity to match or exceed the compensation level he had upon separating from the City of Tempe by conducting an effective job search campaign for either a Director of Public Works or a City Manager." (Ex. 6, p. 47). However, nowhere in his report does Mr. Taft specifically identify a single substantially equivalent position in the State of Arizona or in the metropolitan Phoenix area for a Director of Public Works or City Manager available position for which Bessler was qualified and which was in the pay range that he was making at the City of Tempe. Further, Mr. Taft testified in a prior litigation that negative publicity about an applicant could make it more difficult for that individual to find a position. (Ex. 6, p. 23). Although Mr. Taft was provided newspaper articles about Bessler's separation from City of Tempe, inexplicably he did not review those as he did not deem it necessary. (*Id*., p. 24).

Alarmingly, in deposition, Mr. Taft admitted he does not know the legal standard governing mitigation of damages in the Ninth Circuit (Ex.6, p. 18), does not know which party has the burden of proof for an affirmative defenses of failure to mitigate damages (Ex. 6, p. 19), and is unaware of the standard courts apply to employment cases with regard to the former employee's obligation to look for work in states other than where he or she resides. (Ex. 6, p. 43). Mr. Taft is unaware of any legal cases which require a terminated employee to look for a job out of the state where he or she resides. (*Id*.)

## II.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for

trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  In this case, the *Celotex* principles are important because Defendant lacks the evidence, or legal basis, to sustain their mitigation of damages defense under ADEA.

### III. DEFENDANTS FAILED TO MEET THE TWO-PRONG TEST AS SET FORTH IN *ODIMA v. WESTIN TUCSON HOTEL* TO SUPPORT THE MITIGATION DEFENSE.

**A. Legal Standard for Mitigation of Damages**.

A discharged employee has an affirmative duty to mitigate his damages.  A plaintiff who has allegedly been wrongfully terminated has a duty to "use reasonable diligence in finding other suitable employment." *See Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995). The inquiry into an employee's reasonable diligence must be "tailor[ed] ... to the particular circumstances of the individual employee." *EEOC v. Pape Lift, Inc.,* 115 F.3d 676, 684 (9th Cir. 1997). The victim "is not held to the highest standard of diligence in his ... efforts to secure comparable employment - 'reasonable' exertions are sufficient." *Iron Workers Local 118 v. NLRB,* 804 F.2d 1100, 1102 (9th Cir. 1986) (citations omitted).

A suitable position is one that is "substantially equivalent" to a plaintiff's previous job. *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 232, 102 S.Ct. 3057, 73 L.Ed.2d 721

(1982); *Ingram v. Pac. Gas & Elec. Co.,* No. 12-CV-02777-JST, 2014 WL 295829, at *6 (N.D.Cal. Jan. 27, 2014). In evaluating whether a comparable position is "substantially equivalent," the position must be consistent with a plaintiff's skills, background and experience as well as providing similar compensation, responsibilities, conditions, and status. *See EEOC v. Paper Lift, Inc.* 115 F.3d 676 (9th Cir. 1997); *EEOC v. Exxon Shipping Co.,* 745 F.2d 967 (5th Cir. 1984); *Seller v. Delgado Community College.,* 839 F.2d 1132 (5th Cir. 1988); *Cassella v. Mineral Park, Inc.,* No. 08-01196, 2010 WL 454992, at *5 (D. Ariz. Feb. 9, 2010) (Murguia, J.) (quoting *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir. 1990)). Indeed, the Supreme Court has recognized that victims of discrimination may mitigate their losses by taking lower-paying jobs. *Ford Motor Co.,* 458 U.S. at 231 n.14.

When a defendant employer seeks to assert the defense that a plaintiff did not use reasonable diligence, the Ninth Circuit devised a two-part test to determine whether the plaintiff's conduct was reasonable. This was set forth in *Odima*, 53 F.3d 1496-7. The defendant must demonstrate that both there were "substantially equivalent jobs available" **and** that plaintiff failed to use "reasonable diligence in seeking one." As noted by the *Odima* Court:

> Westin presented no evidence as to the availability of comparable employment. Westin contends that it did not need to present such evidence because "[i]f an employer proves that a plaintiff failed to look for work, the employer is not required to prove that jobs were available." Westin notably cites no Ninth Circuit authority for this purported exception to the general rule, and we can find none.

*Id. See also, EEOC v. Farmer Bros.,* 31 F.3d 891 (9th Cir. 1994) (both prongs of test evaluated and noted as required for plaintiff who left the job market—defendant provided evidence of job availability and plaintiff's job search.); *Kawar v. JPMorgan Chase and Co.,* 2009 WL 1698918 (D.Ariz. 2009) (granting summary judgment on mitigation defenses as employer failed to provide sufficient evidence of substantially equivalent available jobs).

The Ninth Circuit clearly recognizes that the two-prong test provides the appropriate evidence for a factfinder to determine whether a plaintiff's conduct was reasonable. First, the

employer must prove the employee's conduct in looking for work was deficient. Secondly, a defendant, by providing evidence of the availability of equivalent jobs were available, allows a factfinder to determine if a plaintiff's conduct was reasonable. Therefore, the standard for mitigation in the Ninth Circuit requires that a defendant employer provide **both** evidence regarding the plaintiff's efforts to find employment and the availability of employment to allow a factfinder to determine the "reasonableness" of the employee's behavior. As argued below, Defendant has failed to produce evidence to support the availability of substantially equivalent employment and its expert witness has admitted that Bessler's initial job search which led to his City of Glendale employment was effective and reasonable.

A discharged employee is not obligated to accept employment at a distance from his home.[2] *See also*, *Donlan v. Phillips Lighting of North America Corp.,* 581 F.3d 73, 89 (3rd Cir. 2009); *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 625 (6th Cir. 1983) (plaintiff not obligated to accept positions 50 miles from home locale); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 119 (4th Cir. 1983) (plaintiff not required to accept position unreasonable distance from home); *Lavely v. Trustees for Boston University,* 1987 WL 17539, at *6 (D.Mass. 1987) (professor not expected to apply to 31 jobs listed in other parts of country or six other jobs in the New England area and it was appropriate to limit job search to the Boston area based on long standing ties to the area). This includes a relocation, even if for a temporary period. *Spagnuolo, supra* ("relocation, even for a temporary period, is likely to be particularly unwelcome to a victim of …discrimination, who is most likely to have substantial personal and business ties to [her] community"). In age discrimination cases the well-entrenched rule for mitigation of damages does not require relocation of the plaintiff. *Moore v. The University of Notre Dame*, 22 F. Supp. 2d 896, 906-07 (N.D. Ind. 1998); *Glass v. IDS Financial Services, Inc.*, 778 F. Supp. 1029, 1075 (D. Minn. 1991);

---

[2] Guidance on the policy of delimiting the duty to mitigate is found in the *Restatements of the Law*. The *Restatements* articulate commonly accepted principles of common law. The *Restatement (Second) of Agency* §455 illustrates that in a breach of employment, the employee need not move out-of-state to obtain employment.

and *E.E.O.C. v. Com. of Pa.*, 772 F Supp 217, 222 (M.D. Pa. 1991), *aff'd*, 977 F.2d 738 (3d Cir. 1992) ("The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home.") (quoting *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 119 (4th Cir. 1983)).

In the present case, Defendant's expert relies on a significant number of undefined job opportunities outside the State of Arizona. As a matter of law, the job opportunities outside of the State of Arizona and per the case law above even outside the Phoenix metropolitan area are irrelevant in determining whether there are job opportunities for which Bessler should have applied. This is even further satisfied by the fact that Bessler is currently 62 years old and has lived in the Phoenix metropolitan area for nearly ten years, has family in the area and his wife currently has full-time employment. (Ex. 1).

### B. No Reasonable Jury Could Find Bessler's Efforts to Secure Employment Were Unreasonable in Light of His Securing Substantially Equivalent Employment Within 25 Days.

As noted above, Bessler submitted 11 applications for employment and secured 5 interviews prior to securing a substantially equivalent position with the City of Glendale in just 25 days after his employment with the City of Tempe ended. Defendant, through its expert witness Mr. Taft, admits that Bessler "…certainly was effective in gaining interviews, as well as receiving a job offer in the time period when he left City of Tempe to when he accepted the position with the City of Glendale." (Ex. 6, p. 33). Mr. Taft further admitted that Bessler's initial stage of his job search was reasonable. (*Id*.) Consequently, Defendant cannot satisfy the first *Odima* prong: it has produced no evidence Bessler's initial job search which lead to his City of Glendale employment was unreasonable or ineffective.

Moreover, no reasonable juror could find that the City of Glendale job was not a substantially equivalent position to that which Bessler had with the City of Tempe. Both involved employment with municipal government administration in which Bessler had been

employed his entire 40 year working life. His City of Glendale salary was but $25,000 or 14% less annually than the City of Tempe and he enjoyed benefits in both positions. Moreover, consistent with his City of Tempe position, the City of Glendale position allowed Bessler to keep making contributions to the Arizona State Retirement System, a significant factor at age 60 when he obtained the City of Glendale position. Moreover, his so-called temporary employment will last at least 2.5 years and may extend even longer as in July 2019, Bessler was asked to supervise the City of Glendale Engineering Department. (Ex. 7, p. 147-149).

Finally, nowhere in his report did Mr. Taft identify any specific jobs and job advertisements for substantially equivalent positions which he believed Bessler should have submitted an application for between November 2, 2018 - December 18, 2018. (Ex. 6, p. 53). Mr. Taft's database search and report merely identifies thousands of jobs without any detailed analysis of whether Bessler was qualified for any of the positions, what the salary and the benefits were, or whether they were substantially equivalent to his City of Tempe employment.

Therefore, Defendant has produced no evidence under either prong of the *Odima* standard that Bessler's conduct was unreasonable or has it identified substantially equivalent available jobs Bessler was qualified for before accepting employment with the City of Glendale. The failure to present evidence on the existence of substantially equivalent, available jobs forecloses the possibility of a mitigation defense, warranting judgment as a matter of law. *Odima,* 53 F.3d at 1497 (holding that a defendant failed to carry the burden on mitigation after a bench trial because it presented "no evidence as to the availability of comparable employment"); *Ingram,* 2014 WL 295829, at *6 (holding that "[a] failure to present any evidence of substantially equivalent jobs is fatal to the mitigation defense," and granting summary judgment on that issue). Defendant has not satisfied its burden of proof on its affirmative defense of mitigation of damages and it therefore fails.

/ / /

### C. Defendant Provided No Evidence of Substantially Equivalent Available Jobs in 2018-2020.

Mr. Taft's ultimate opinion is that instead of ending his job search and accepting full-time temporary position as Chief Officer, Capital Programs with the City of Glendale, Bessler had the opportunity to match or exceed the compensation level he enjoyed with the City of Tempe by conducting an effective job search campaign for either Director of Public Works or a City Manager. (Ex. 2, p. 8). Although Mr. Taft's Report does show median incomes for Director of Public Works and City Manager positions in Phoenix, Denver and Los Angeles, he does not identify any such available positions in his Report. (Ex. 2, p. 8). Nowhere in Mr. Taft's report did he identify a single substantially equivalent Director of Public Works or City Manager position for which Bessler was qualified in the pay range that he was making at the City of Tempe. (Ex. 6, p. 53). Consequently, although Mr. Taft may be critical of Bessler for accepting the Glendale position and not continuing a job search for a position paying comparable compensation to the City of Tempe, Defendant has not satisfied the second prong of the *Odima* standard, *i.e.*, it has not identified substantially equivalent positions which were available and for which Bessler was qualified in 2018-2020 in support of Mr. Taft's position that Bessler should not have accepted the City of Glendale job and continued his job search. A mere listing of 4,431 jobs without a scintilla of analysis is not useful nor enough to show that the jobs were substantially equivalent.[3]

---

[3] Indeed, defendants are often not allowed to present even expert testimony as to a plaintiff's allegedly deficient job search efforts until defendants *first* demonstrate the existence of substantially equivalent jobs. *Rusch v. Midwest Indus. Inc.,* No. 10-CV-4110-DEO, 2012 WL 2873871, at *3 (N.D. Iowa July 12, 2012) ("there cannot be a causal connection between a Plaintiff's failure-to-mitigate and his damages unless other employment was actually available" and excluding expert testimony on mitigation because "Defendant has failed to identify other suitable job opportunities which Plaintiff could have pursued."); *Smith v. Rosebud Farmstand,* No. 11-CV-9147, 2016 WL 5912886, at *20 (N.D. Ill. Oct. 11, 2016) (even where an expert identified thousands of job openings, such information tells the court "very little about whether Plaintiff had a legitimate opportunity to secure those jobs had he applied," thus warranting exclusion of the expert's mitigation testimony).

### D. Bessler Had No Continuing Duty to Look for Employment After Accepting the Substantially Equivalent Job with the City of Glendale.

Mr. Taft's primary opinion in terms of Bessler's employability is that he had the opportunity to continue in his current role with Glendale or based upon his wealth of experience and talents, he could have continued to look for other positions, especially in city government. (Ex. 6, p. 38). Mr. Taft further opines that instead of ending his job search and accepting the Glendale position, Bessler had the opportunity to match or exceed his City of Tempe compensation by conducting an effective job search for either a Director of Public Works or a City Manager. (Ex. 6, p. 47). However, the law is clear that having found a substantially equivalent job with the City of Glendale, although at 14% less than his City of Tempe salary, Bessler had no continuing duty to mitigate his damages.

In *Ford Motor Co. v. EEOC,* 458 U.S. at 226, n. 8, 102 S.Ct. at 3067, n. 8, the Court noted that Title VII's back pay provision (which is also applied in ADEA cases), § 706(g), was "expressly modeled" on the analogous remedial provision of the National Labor Relations Act (NLRA). See § 10(c), 49 Stat. 454, as amended, 29 U.S.C. § 160(c); *Albemarle Paper Co. v. Moody,* 422 U.S. at 419, and n. 11, 95 S.Ct. at 2372, and n. 11. As a result, the Court in *Ford Motor Company* relied extensively on NLRA back pay principles in developing the opinion. Such guidance from back pay decisions arising under the NLRA is appropriate here, as well. The key issue is whether such a claimant who accepts a lower paying job, and wishes to maintain it, nevertheless has a duty to maintain a continued search for higher paying employment.

Mr. Taft apparently asserts that Bessler was under an obligation to continue to seek employment even after accepting the position at the City of Glendale. However, such an assertion is contrary to the law. "[O]nce an unlawfully discharged...claimant has exercised reasonable diligence to find similar employment, has been unable to do so, and then accepts a lower paying job, does the duty to mitigate damages require that claimant continue to search for higher paid employment? We believe it does not." *Brady v. Thurston Motor Lines, Inc.*,

753 F.2d 1269, 1274 (4th Cir.1985) (holding that a claimant who accepted a lower paying position at a country club after unsuccessfully searching for a year was under no obligation to continue searching for a higher paying position). Notably, the Fourth Circuit has also held that once an employee accepts a lower paying position in order to mitigate their damages, they are free to stay in that position and are not required to continue searching for higher paying employment. *See NLRB v. Pepsi Cola Bottling Co.,* 258 F.3d 305, 311 (4th Cir. 2001) (claimant who accepts suitable lower-paying employment has no duty to search for a more lucrative job and does not suffice to a finding that a discriminatee has found suitable alternative employment); *Brady*, 753 F.2d at 1274; *Lundy Packing Co. v. NLRB*, 856 F.2d 627, 629-30 (4th Cir. 1988) (holding that employees who accepted part-time or seasonal employment and discontinued searches for full-time jobs did not demonstrate unreasonable or willful loss of earnings for mitigation purposes); *Ingram v. Madison Square Garden Ctr., Inc.,* 535 F. Supp. 1082, 1092 (S.D.N.Y. 1982) (persons holding full-time job are "not required to do anything more to mitigate").

*J.H. Rutter Rex Manufacturing Co., Inc. v. NLRB,* 473 F.2d 223 (5th Cir.1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973) is likewise illustrative. There, the plaintiffs accepted lower paying jobs following their unlawful discharges. Evidence was presented establishing that the claimants diligently sought similar employment following their discharges but had been unsuccessful. The employer contended that this failure to secure similar employment violated the duty to mitigate damages. In rejecting the argument that the claimants who remained in low paying jobs had failed to mitigate their damages, the *J.H. Rutter* court held that where the employees were forced to "'lowe[r] their sights' ... accepting what might have been the best job available, the claimants were doing all that could reasonably be expected of them by way of mitigation." *Id.* at 242.

## IV.     CONCLUSION

Consequently, any claim that Bessler failed to mitigate his damages in 2018 and thereafter fails as Defendant cannot satisfy either of the two prongs of the Ninth Circuit's test

regarding mitigation. First, the City's expert confirmed Bessler's efforts to secure employment in 2018 were reasonable. Second, the City's expert provided no evidence of substantially equivalent available jobs in the metropolitan Phoenix area for which Bessler was qualified. Third, having found substantially equivalent employment, Bessler's mitigation efforts were sufficient and he was not required to keep searching for a position at the same compensation level he enjoyed with the City of Tempe. Summary judgment should be granted on Defendant's affirmative defense of mitigation of damages.

DATED this 8th day of January 2021.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Tod F. Schleier
Tod Schleier
Attorneys for Plaintiff

I certify that on this 8th day of January 2021, I electronically filed the foregoing with the U.S. District Court Clerk using the CM/ECF system, which shall send notification of such filing to:

Greg Coulter, Esq.
JACKSON LEWIS
2111 E. Highland Avenue, #B250
Phoenix, AZ  85016
Attorney for Defendant

/s/ Cindy J. Anderson