**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Bessler, a married man, ) | Case No.: 2:19 CV 04610 JJT |
| ) | |
| Plaintiff, ) | **PLAINTIFF'S MOTION TO** |
| v. ) | **DISQUALIFY OR LIMIT THE** |
| ) | **TESTIMONY OF DEFENDANT'S** |
| City of Tempe, an Arizona municipal ) | **VOCATIONAL EXPERT BRADFORD** |
| corporation, ) | **TAFT UNDER *DAUBERT*** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff, by and through counsel, moves the Court, pursuant to Rules 702, 704 and 403 of the Federal Rules of Evidence, for an Order prohibiting Defendant City of Tempe, its counsel, or any witness from attempting to introduce either the testimony of Bradford Taft, its "vocational expert" Defendant hired to opine that Plaintiff did not mitigate his damages or Mr. Taft's August 20, 2020 Report. Mr. Taft has testified that Plaintiff's initial job search was reasonable and effective when he secured employment twenty-five days after the termination of his employment. In addition, Mr. Taft failed to identify substantially equivalent available job positions that Plaintiff should have considered which thereby rendered his opinion irrelevant. Alternatively, the Court should preclude Mr. Taft from

testifying about (1) any substantially equivalent positions Plaintiff should have applied for because Taft failed to identify specifically those available positions in his report;[1] and (2) any potential positions outside the State of Arizona because Plaintiff was under no duty to look for out of state positions to mitigate his damages. A copy of Mr. Taft's Report is attached as Exhibit 1.

As discussed below, Mr. Taft's opinions are inadmissible because he fails to meet the standards for expert testimony under Fed.R.Evid. 702 and 704, and his opinions are based upon insufficient facts with no analytical methods related to the facts of this case and the law of the Ninth Circuit. To the extent any of Mr. Taft's testimony or the Report is deemed admissible, the limited probative value of such testimony is substantially outweighed by the dangers of unfair prejudice and waste of time, and should, therefore, be excluded pursuant to Fed.R.Evid. 403.

The attached Memorandum of Points and Authorities and along with relevant evidence submitted herewith support the granting of Plaintiff's Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   FACTUAL BACKGROUND

**A. Bessler's Employment is Terminated by the City of Tempe on November 2, 2018 and He Secures Employment on November 27, 2018, Just 25 Days Later.**

In the present action, Plaintiff Donald Bessler has alleged that Defendant City of Tempe retaliated against him in violation of the Age Discrimination of Employment Act of 1967, 29 U.S.C. §621 *et seq.* ("ADEA") after it learned he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") when it subsequently terminated his employment on October 19, 2018, effective November 2, 2018.

---

[1] The Scheduling Order (Doc. 22) required: "The Defendant shall provide **full** and **complete** expert disclosures, as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure…." (Emphasis added)

In the Answer to the Second Amended Complaint, Defendant alleged that Plaintiff had failed to mitigate his damages as an affirmative defense. (Doc. 16, p. 6).

Plaintiff Donald Bessler ("Plaintiff") was employed by the City of Tempe as its Public Works Director for eight (8) years from about September 25, 2012 up to his termination on November 2, 2018. "Bessler Declaration" (Doc. 84-2[2]). Immediately after learning his employment would be terminated, Plaintiff started his job search and submitted eleven (11) applications for employment and had five (5) interviews. (Exhibit 1, p. 5).

On November 27, 2018, just **twenty-five (25)** days after the termination of employment, Bessler was tendered a form boilerplate Temporary ("AT-WILL") Employment Contract by the City of Glendale. "Anaradian email" (Doc. 84-3). On December 18, 2018, Plaintiff met with Mr. Anaradian of the City of Glendale and it was agreed that Plaintiff would commence employment on January 14, 2019. "Bessler Declaration" (Doc. 84-2). On that date, Plaintiff and the City of Glendale signed a Temporary Employment Agreement with the City of Glendale for the period January 14, 2019-October 18, 2019. (Doc. 84-3, pp. 7-9). The Temporary Employment Agreement has been renewed twice – from December 21, 2019-December 21, 2020 and July 1, 2020-June 30, 2021. (Doc. 84-4, pp. 2-7). Plaintiff will have been employed by the City of Glendale for 2.5 years by June 30, 2021 and the Agreement may be again renewed. In summary, Bessler found acceptable employment just twenty-five (25) days after being terminated by the City of Tempe and commenced that employment on January 14, 2019, where he currently remains employed.

**B. The Opinions of Defendant's Vocational Expert, Bradford H. Taft.**

Bradford H. Taft was retained by Defendant in late March 2020 to perform a vocational assessment/earning capacity analysis. (Exhibit 1, p. 2). Mr. Taft was retained to conduct an analysis to assess whether or not the job search Bessler performed following his termination rose to the level of reasonable and diligent search and whether there were

---

[2] In accordance with L.R.Civ. 7.2, "Doc." refers to the document number assigned to a previously filed document followed by the page reference.

comparable jobs in the labor market. Mr. Taft's report describes his analysis and conclusions. (*Id.*)

Mr. Taft's report states that Mr. Bessler's hourly final pay at the City of Tempe was $87.08 for an annualized salary of $181,138 and that his hourly rate of pay at the City of Glendale was $75.00 for an annualized salary of $156,000, which is $25,000 less or 86% of his prior City of Tempe salary. (Exhibit 1, p. 4; Taft Deposition Excerpts, Doc. 84-5, p. 10). As to Plaintiff's initial job search, Mr. Taft testified that Bessler identified positions that were posted by both government entities, as well as consulting firms and believes those efforts were reasonable during the initial stage of his job search. (Doc. 84-5, p. 12). As to Bessler's job search which resulted in his City of Glendale employment, Mr. Taft states: "Although he did not indicate in terms of the documentation a large number of positions that he applied for, he certainly was effective in gaining interviews, as well as receiving a job offer in the time period when he left City of Tempe to when he accepted the position with the City of Glendale." (*Id.*). In his deposition, Mr. Taft further testified:

> Q. Do you know what efforts Mr. Bessler took to identify open positions through various sources, including internet job sites?
> A. Yes.
> Q. What did he do?
> A. He identified positions that were posted by both government entities, as well as consulting firms.
> Q. Do you think that was **reasonable** on his behalf?
> A. During the initial stage of his job search, yes.

(*Id.*, emphasis added). Consequently, Mr. Taft has admitted that Plaintiff's initial job search which led to his City of Glendale employment was reasonable and effective.

In his file, Mr. Taft had a third-party company, Forensic Job Stats, perform a database search which revealed 4,431 job advertisements during the period of November 1, 2018 to April 10, 2020, in Arizona, California, Colorado and New Mexico with seven different occupational categories. (Exhibit 1, p. 6). Mr. Taft admitted that Bessler would not be qualified for all of the positions that the database search showed, but that he had the

experience, talents, the qualifications, to be considered for a number of those jobs. Yet, again, Mr. Taft did not identify a single specific substantially equivalent positions for which Bessler was qualified. (Exhibit 2). Nowhere in his report does Mr. Taft identify or list a single specific job or job advertisement that he believed Bessler should have submitted an application for between the time period November 2, 2018 to December 18, 2018 when he met with the City of Glendale and his start date was agreed upon to be January 14, 2019. (Doc. 84-5, p. 14). Moreover, as set forth below, the law is clear that Bessler was not required to relocate to another state as part of his mitigation obligations.

With respect to his opinion on mitigation of damages, it is Mr. Taft's opinion that Bessler had the opportunity to continue his career by conducting a job search to identify and be considered for positions that he would be qualified for that would pay in the range, or above the range in which he was making at the City of Tempe. (*Id*., p. 18). He further opined: "Therefore, instead of ending his job search and accepting the full-time temporary position as Chief Officer, Capital Programs with the City of Glendale, which pays an annualized salary of $156,000 plus benefits, I opined that Mr. Bessler had the opportunity to match or exceed the compensation level he had upon separating from the City of Tempe by conducting an effective job search campaign for either a Director of Public Works or a City Manager." (*Id*., p. 16). However, nowhere in his report does Mr. Taft specifically identify a single substantially equivalent positions (Director of Public Works or City Manager) in the State of Arizona or Maricopa County for which Bessler was qualified and within the pay range that he was making at the City of Tempe. (*Id*.)

Further, in deposition, Mr. Taft admitted he does not know the legal standard governing mitigation of damages in the Ninth Circuit. (*Id*., p. 4), does not know which party has the burden of proof on an affirmative defenses of failure to mitigate damages (*Id*., p. 5) nor is he aware of the standard courts apply to employment cases with regard to the former employee's obligation to look for work in states other than where he resides. (*Id*., p. 15).

Mr. Taft is unaware of any legal cases which require a terminated employee to look for a job out of the state or locale where the terminated employee resides (*Id.*).

## II. ARGUMENT

### A. Standard for Admissibility of Expert Testimony.

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). Under Rule 702, a qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702(a)(d). An expert may be qualified to testify based on his "knowledge, skill, experience, training, or education." *Id.*

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed.R.Evid. 401. The trial court must first assess whether the expert testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Id.* The proponent of expert testimony has the ultimate burden of showing that the expert is qualified and the proposed testimony is admissible under Rule 702. *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on twenty-one years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed.R.Evid. 702; *Daubert*, 509 U.S. at 579.

The Court is obliged to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. This "gatekeeping" requirement applies to all expert testimony. *Kumho Tire Co.,* 526 U.S. 137.

### B. Because Bessler Found Substantially Equivalent Employment Twenty-Five Days after His Termination, Mr. Taft's Opinions are Irrelevant and Will Not Assist the Jury.

Bessler urges the Court to strike or limit Mr. Taft's report and his expert opinions and conclusions relating to Plaintiff's mitigation of damages in light of Mr. Taft's admission that he was unaware of the legal standard for evaluating mitigation of damages in discrimination/retaliation employment claims. Moreover, because Mr. Taft has admitted that Bessler's initial job search was reasonable and effective and Bessler became employed twenty-five (25) days after his termination, Mr. Taft's opinions are irrelevant and will not assist the jury.

Plaintiff submits that Mr. Taft's opinions are not based on sufficient facts and data as required by *Daubert* and Rule 702. Experts must base their opinions on specific facts. *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001). When an expert

fails to do so, or bases opinions on "subjective belief or unsupported speculation," *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786, the expert's testimony should be excluded. *Guidroz-Brault*, 254 F.3d at 829-832. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993)).

Mr. Taft's expert testimony is irrelevant because he did not identify substantially equivalent positions Bessler should have applied for from the date of his termination until he was re-employed by the City of Glendale. As noted in Plaintiff's Motion for Summary Judgment Re: Affirmative Defense of Mitigation of Damages (Doc. 84, pp. 6-8), the Ninth Circuit has devised a two-part test to determine whether the plaintiff's conduct was reasonable in *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1496-97 (9th Cir. 1994). Mr. Taft has admitted that Bessler exercised reasonable diligence in his initial job search, yet his report fails to disclose a single substantially equivalent job which was available to Bessler from the date of his termination until he was re-employed by the City of Glendale. Because Mr. Taft's opinion fails both prongs of the *Odima* test for mitigation of damages, his opinions are irrelevant and his report and testimony does not pass the *Daubert* test. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id. See also Dana Corp. v. American Standard, Inc.*, 866 F.Supp. 1481, 1498, 1501 (N.D.Ind. 1994) (to be admissible, expert testimony must satisfy the relevancy requirement of Fed.R.Evid. 401); *Dawsey v. Odin Corp.*, 782 F.2d 1254, 1363 (5th Cir. 1986) (expert testimony excluded pursuant to Fed.R.Evid. 401, 402).

///

### C. Mr. Taft's Report Fails to Identify Substantially Equivalent Positions for Which Bessler Should Have Applied in 2019 or 2020 and Bessler Was Not Required to Look for Out of State Positions.

As noted above, Mr. Taft opined in his report that if Plaintiff wanted to match his previous compensation level with the City of Tempe, he should have conducted an extensive job search and not accepted the City of Glendale position; he opines Plaintiff should have sought a Director of Public Works or City Manager position. To support his conclusion, Mr. Taft had a third-party company conduct a database search which revealed 4,431 job advertisements during the period of November 1, 2018 to April 10, 2020, in Arizona, California, Colorado and New Mexico within seven occupational categories. Yet, nowhere in his report did Taft identify a single substantially equivalent available position Director of Public Works or City Manager position to that which Bessler enjoyed with the City of Tempe. Moreover, Mr. Taft's conclusions and the data utilized were based on a faulty methodology and faulty legal premise, *i.e.*, that Bessler was required to look for employment outside the State of Arizona (or even an unreasonable distance from his home).

As noted in Bessler's Motion for Summary Judgment Re: Affirmative Defense of Mitigation of Damages (Doc. 84, pp. 8-9), a discharged employee is not obligated to accept employment at a distance from his home. *See*, *Donlan v. Phillips Lighting of North America Corp.,* 581 F.3d 73, 89 (3rd Cir. 2009); *Rasimas v. Michigan Dept. of Mental Health,* 714 F.2d 614, 625 (6th Cir. 1983) (plaintiff not obligated to accept positions 50 miles from home locale); *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114, 119 (4th Cir. 1983) (plaintiff not required to accept position unreasonable distance from home); *Lavely v. Trustees for Boston University,* 1987 WL 17539, at *6 (D.Mass. 1987) (professor not expected to apply to 31 jobs listed in other parts of country or six other jobs in the New England area, and it was appropriate to limit job search to the Boston area based on long standing ties to the area). This includes a relocation, even if for a temporary period. *Spagnuolo, supra* ("relocation, even for a temporary period, is likely to be

particularly unwelcome to a victim of …discrimination, who is most likely to have substantial personal and business ties to [her] community").

The fault of Mr. Taft's Report is that it just is not useful. All that Mr. Taft's file and report provides is unrefined data: a raw number (4,431) of job advertisements from November 2018-April 2020 in Arizona, Colorado, California and New Mexico in seven occupational categories. His Report does not identify a single substantially equivalent available job for which Bessler was qualified, the job location, job duties, compensation, or benefits. Although his Report does contain salary ranges for Director of Public Works and City Manager positions for Phoenix, Denver and Los Angeles, it does not identify a single available position in those job categories.

While "[t]rained experts commonly extrapolate from existing data[,] *** nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Davis v. McKesson Corporation*, 2019 WL 3532179, at *4, (D. Ariz. Aug. 2, 2019). In other words, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008).

And because Defendant must establish both prongs of the *Odima* standard, the failure by Mr. Taft to identify substantially equivalent available positions renders his opinions irrelevant and unreliable. As noted herein, Mr. Taft was also unaware Bessler was under no duty to relocate out of Arizona or an unreasonable distance from his home. During his deposition testimony, Mr. Taft admitted that he was completely unaware of the "methodology" applied for analyzing mitigation of damages efforts of employees in discrimination/retaliation cases and his report clearly evidences his lack of awareness and necessary knowledge/expertise. Consequently, in light of Mr. Taft's lack of knowledge about the appropriate methodology used by the courts to evaluate mitigation of damages, the Court should exclude or limit any testimony or conclusions reached by Mr. Taft relating to Plaintiff's mitigation efforts.

### D. Mr. Taft's Report is Irrelevant Because Having Found Substantially Equivalent Employment, Bessler Was Under No Continuing Duty to Mitigate His Damages.

Mr. Taft's primary opinion in terms of Bessler's employability is that he had the opportunity to continue in his current role with Glendale or based upon his wealth of experience and talents, he could have continued to look for other positions, especially in city government. (Doc. 84-5, p. 13). Mr. Taft further opines that instead of ending his job search and accepting the Glendale position, Bessler had the opportunity to match or exceed his City of Tempe compensation by conducting an effective job search for either a Director of Public Works or a City Manager. (*Id*., p. 16). However, the law is clear that having found a substantially equivalent job with the City of Glendale, although at 14% less than his City of Tempe salary, Bessler had no continuing duty to mitigate his damages.

As set forth below, based on Mr. Taft's report and his deposition testimony, the law mandates exclusion of his opinions from the trial of this case.

> "In some cases ... the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict. *** If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed.R.Evid. 403."

*See, Bacque v. City of Scott*, 2008 WL 885991 at *4 (W.D. La. 2008) (excluding report and testimony of a highly seasoned professional vocational rehabilitation expert and limiting plaintiff's attempt to rehabilitate the expert to comparable positions available "in the greater Lafayette metropolitan area").

This is precisely the case here. "[O]nce an unlawfully discharged...claimant has exercised reasonable diligence to find similar employment, has been unable to do so, and then accepts a lower paying job, does the duty to mitigate damages require that claimant continue to search for higher paid employment? We believe it does not." *Brady v. Thurston Motor*

*Lines, Inc.*, 753 F.2d 1269, 1274 (4th Cir.1985). Notably, the Fourth Circuit has also held that once an employee accepts a lower paying position in order to mitigate their damages, they are free to stay in that position and are not required to continue searching for higher paying employment. *See NLRB v. Pepsi Cola Bottling Co.,* 258 F.3d 305, 311 (4th Cir. 2001) ; *Brady*, 753 F.2d at 1274; *Lundv Packing Co. v. NLRB*, 856 F.2d 627, 629-30 (4th Cir. 1988) (holding employees who accepted part-time or seasonal employment and discontinued searches for full-time jobs did not demonstrate unreasonable or willful loss of earnings for mitigation purposes). Other courts have also held that an employed claimant is not required to leave his/her lower-paying job to seek a more lucrative one. *Ingram v. Madison Square Garden Ctr., Inc.,* 535 F. Supp. 1082, 1092 (S.D.N.Y. 1982) (persons holding full-time job "not required to do anything more to mitigate"); *J.H. Rutter Rex Manufacturing Co., Inc. v. NLRB,* 473 F.2d 223 (5th Cir.1973), *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973).

Should Mr. Taft's opinions and testimony be admitted, it would only confuse and/or mislead the jury by supplying a predicate wholly unreliable and contrary to law under Rule 702. The evidence must therefore be excluded, not only as unhelpful under Rule 702(a), but also under Rule 403, because its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. The information Mr. Taft now offers will only confuse and/or mislead the jury and cause them only to speculate about whether Plaintiff failed to mitigate his wage loss when Bessler had no obligation to seek another position after, as Mr. Taft concluded, that Bessler had engaged in a reasonable and effective job search.

Consequently, because Mr. Taft's opinion concerning Bessler's duty to mitigate damages ignores the fact that once employed he was under no duty to continue his job search, it is irrelevant and should be excluded.

### III    CONCLUSION

Based on the above, Bessler requests that the Court exercise its role as "gatekeeper" and Order that Mr. Taft's testimony and report relating to mitigation of damages be excluded or limited as set forth above.

DATED this 15th day of January 2021.

SCHLEIER LAW OFFICES, P.C.

/s/ Tod F. Schleier
Tod F. Schleier
*Attorneys for Plaintiff Donald Bessler*

I certify that on this 15th day of January 2021, I electronically filed the foregoing with the U.S. District Court Clerk using the CM/ECF system, which shall send notification of such filing to:

Greg Coulter, Esq.
Beth Connor, Esq.
JACKSON LEWIS
2111 E. Highland Avenue, #B250
Phoenix, AZ  85016
Attorney for Defendant

/s/ Cindy J. Anderson