SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250
TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Bessler, a married man, | Case No.: 2:19 CV 04610-PHX- MTL |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| City of Tempe, an Arizona municipal corporation, | |
| Defendant. | |

Plaintiff, by and through counsel, requests the Court to deny Defendant's Motion for Summary Judgment as genuine issues of material fact exist precluding summary judgment on Defendant's liability Motion.[1]  Plaintiff's testimony and contemporaneously prepared affidavit dated September 7, 2018 reveal that on September 6, 2018, he never told Methvin he wanted to leave his employment, resign or a severance. Moreover, the substance of Plaintiff and Methvin's testimony relative to their conversation at the City of Tempe Retreat on September 21, 2018 is disputed.

---

[1] As to  Defendant's Motion Re: Mitigation of Damages, Plaintiff  incorporates  by reference his  prior Motion (Doc. 84), Reply (Doc. 99) and  *Daubert* Motion (Doc. 85) and  Reply (Doc. 98), and Defendant's Motion should  be denied.

Finally, Ching testified that as of September 6, 2018, he had not made a final decision relative to Bessler's employment with the City, raising disputed issues on but-for causation in light of *Bostock v. Clayton County, Ga.*, 140 S.Ct. 1731 (2020). The attached Memorandum of Points and Authorities and relevant facts submitted herewith support the granting of Plaintiff's Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

#### A. City Attorney Andrew Ching Creates a Hostile Work Environment for Public Works Director Bessler.

Plaintiff Donald Bessler ("Bessler") has alleged that Defendant City of Tempe ("City of Tempe") retaliated against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et seq.* ("ADEA") after it learned on September 24, 2018 he had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), told him on September 26 that his employment would not continue, and subsequently terminated his employment on October 19, 2018, effective November 2, 2018.

Bessler was employed by the City of Tempe as its Public Works ("PW") Director for eight (8) years from August 2, 2010 up to his termination on November 2, 2018. (Ex. A, 17:6-8; 21:25-22:5; Ex. I, ¶2). His supervisor was Steven Methvin, Deputy City Manager, who reported to Andrew Ching, Tempe City Manager. (*Id.*, 94:25-95:3; Ex. E, 10:25-11:5; Ex. F, 13:20-25). At no time during Bessler's employment did Methvin issue a performance review or written warning. (Ex. E, 16:10-18). PW employees testified Bessler was an excellent, compassionate, open, and communicative manager and that he stressed coaching, development and mentored PW employees. (Ex. B, 10:6-15:8; 126:9-128:1; Ex. C, 47:15-48:19; Ex. D, 7:12-10:11; 12:13-22; Ex. E, 16:2-17:3). Indeed, on August 2, 2018, Ching told Bessler that he had several more years of utility left to serve the City of Tempe. (Ex. A, 78:7-12; Ex. F, 49:5-9, 50:18-23). Although Bessler was an unclassified, at-will

employee, City of Tempe policies require the City to provide notice to employees when their job performance is deficient. (Ex. G; Ex. H, 21:19-23:11; 24:17-25:7).

During his employment, Bessler attended weekly and biweekly staff meetings conducted by Ching. (Ex. D, 12:24-14:8). Ten to fifteen employees would attend weekly staff meetings. (*Id*.). In those meetings, Ching targeted Bessler for criticism, humiliated him, and berated Bessler in front of Bessler's management peers. (Ex A, 39:21-40:25; 73:2-74:16; 114:13-115:7; Ex. 7, Doc 100-3, p. 2). On October 20, 2017, Bessler met privately with Ching and asked him why Ching treated him with such disrespect at staff meetings; Ching indicated he was making a point to other attendees and that he believed based upon Bessler's experience, he could handle the treatment. (Ex. A, 154:14-25; Ex. 7, Doc 100-3, p. 2). Bessler was the oldest male employee at staff meetings and he believed he was mistreated by Ching due to his age and experience. (Ex. A, 56:12-22; 67:7-20). Ching repeated his comment during a meeting with Bessler on March 8, 2018 and August 31, 2018. (Ex. A, 65:21-67-3).

Indeed, on more than one occasion, Bessler complained about Ching's treatment to Methvin who was empathetic and said "Andrew treats [you] this way because of your experience and because of [your] experience, you should be able to take it." (Ex A, 40:3-18). Bessler interpreted that to mean that he was Ching's piñata and that Ching wanted to send messages to other people and chose Bessler as his mechanism to do that. (*Id*.) Although Methvin did not use the word "age," Bessler told him "how do you get experience, it's through age" and Methvin never said anything in those conversations that made Bessler think it was not about Bessler's age. (*Id*., 40:19-41:1-7).

Bessler was not the only City of Tempe employee who noticed Ching's abusive treatment of him during staff meetings. Chad Weaver, Director of Community Development, and Sylvia Moir, former Tempe Chief of Police, both told Bessler that he was treated badly by Ching, which made Bessler believe that his age and experience made him a target

for Ching.[2] (Ex. A, 56:23-57:1-9). Bessler also had similar conversations with employees Carla Sidi and Lorinda Bush. (*Id.*, 57:11-14). Sidi witnessed Ching direct sarcastic comments to Bessler during staff meetings. (Ex. D, 14:25-15:1-9).

### B. Bessler Never Resigned During the September 6, 2018 Meeting in Direct Contradiction to Methvin's Testimony.

Due to Ching's treatment of Bessler, events occurring during 2018, and Bessler's decline in trust of Methvin, Bessler started documenting the events which were occurring in the form of affidavits which were notarized. (Ex. A, 58:12-24). On September 6, 2018, Methvin met with Bessler in his office and Bessler prepared a contemporaneous affidavit of their conversation which was notarized on September 7, 2018. (Ex. A, 81:12-82:13; Ex. 6, Doc 100-2, p. 112). Methvin prepared no notes, emails, texts or any writing of what occurred during that meeting. (Ex. E, 70:20-71:5). Methvin told Bessler he was concerned for Bessler's future and wanted to make Bessler aware of that concern; he told Bessler he "had to start eating crap sandwiches so that he could improve his relationship with Ching." Methvin "had not been directed to move Bessler out of the organization, but Methvin felt that was a possibility" due to Ching not liking Bessler's "leadership style." (Ex. 6, Doc 100-2, p. 112; Ex. A, 81:12-25; 83:6-9). Upon inquiry by Bessler, Methvin stated that he did not have the same concerns about Bessler's leadership style and stated no one else in PW had expressed any concerns to him or Ching about Bessler's leadership style. (Ex. 6, Doc 100-2, p. 112).

Bessler explained to Methvin he was "worn down," "had little left to come to work and be harassed in that Ching routinely humiliates him with his words and actions." (*Id.*) Bessler again asked Methvin why Ching singled him out in staff meetings and in conference meetings in his office and Methvin stated: "because you are experienced and he can get away with it." (*Id.*) Bessler's affidavit reflects that at the conclusion of the meeting, he and Methvin

---

[2] These out-of-court statements are not hearsay if offered for the purpose of establishing what effect the statement had on the listener. *United States v. Payne*, 944 F.2d 1458, 172 (9th Cir. 1991).

-4-

hugged and Methvin said "let's make sure you get another eighteen months to your ten-year anniversary and I get mine in 3.5 years." (*Id.*). As Bessler testified: "I felt on the meeting on the 6th, that we were going to endeavor to persevere and try to work through our retirements." (Ex. A, 91:14-16).

As Bessler's September 7, 2018 affidavit and testimony reflects, at no time during the September 6, 2018 meeting did Bessler state he wanted to leave his City of Tempe employment. (Ex. 6, Doc 100-2, p. 112). Bessler testified he told Methvin if he were to leave, he would need to be able to figure out a way to make his Arizona retirement whole, but he did not request a severance package at that time. (Ex. A, 53:10-55:11; 83:20-84:1-9). Methvin admits that his recollection of the September 6, 2018 meeting and Bessler's recollection are different. (Ex. E, 100:3-8).

On September 6, 2018, Bessler used the term that Ching had "broken him" and that at some point he might have to consider whether he could continue in that environment or retire. (Ex. A, 83:10-84:9). Bessler never used the word "resign," nor could he have resigned due to the fact that he did not have a fully funded pension, health insurance, nor another job. Bessler's wife had taken a new position in Chandler just months before which reduced her pay significantly and she had no health or retirement benefits at her new job. (Ex. I, ¶5). Bessler believed he would be employed at Tempe at least until his ten-year anniversary, to which Sidi and others testimony confirms. (Ex. 6, Doc 100-2, p. 112; Ex. D, 30:6-31:15; Ex. B, 142:1-11).

In light of a falsehood Methvin told five days later, Methvin's credibility is suspect. On September 11, 2018, Methvin and Bessler met with the PW Water Utility Managers who had raised concerns about Deputy Director of Water Utility, Holly Rosenthal's management style and retaliatory management style, leading to her being placed on administrative leave on August 29, 2018 pending an investigation. When Methvin and Bessler were asked by David McNeil, Environmental Services Manager, at a meeting who decided to bring Rosenthal back

to work after her administrative leave, Methvin said "Andrew, Don and myself," which was false, and Methvin so admitted in his deposition. (Ex. E, 90:19-92:7; Ex. A, 44:8-45:4).

### C. Ching's Deposition Testimony and Declaration Conflict on Whether He Had Made a Final Decision that Bessler's Employment Should End as of September 6, 2018.

In his Declaration, Ching states that when Methvin told him Bessler said he wanted to leave his job with a severance package (which is hotly disputed), Ching saw it as a positive development because by then, his pre-existing concerns about Bessler had caused him to independently conclude that Bessler's employment should end. (Doc. 100-5, ¶5). However, in his deposition, Ching testified that prior to September 6, 2018, he had not communicated to Methvin that he had made a firm decision to terminate Bessler's employment. (Ex. F, 79:6-19). Ching testified: ("… I had made it clear that I had concerns, some significant concerns, with Mr. Bessler continuing as the Public Works Director for the City of Tempe, and that – that was becoming more and more evident with a lot of the activities and actions that had been occurring around this time frame." (*Id*.). Therefore, but for Methvin conveying false and erroneous information to Ching about the September 6 meeting, no final decision had been made to terminate Bessler's employment. Ching's course of action was to instruct Methvin to see what type of severance Bessler wanted, in light of the misinformation Methvin provided to Ching. (Ex. F, 79:20-80:23).

### D. Issues of Disputed Fact Exist as to Whether Methvin and Bessler Discussed Severance Prior to September 24, 2018.

In its Motion, Defendant states that between September 10 and September 24, 2018, Methvin tried, unsuccessfully, to meet privately with Bessler to discuss separation. Methvin testified that on September 21, 2018, both were attending the Tempe City Council Retreat. Methvin claims he met privately with Bessler and stated he wanted to continue their September 6 discussion about his separation; Methvin's Declaration claims Bessler stated:

"Please don't bum me out" and asked to postpone the meeting until the next week. (Doc. 100, pp. 5-6; Doc. 100-5, p. 21, ¶¶10-11).

Again, in direct contradiction to Methvin's testimony, Bessler testified that between September 10 and September 24, 2018, he participated in twenty meetings with Methvin who had multiple opportunities to discuss "separation" with Bessler but did not. Significantly, relative to the September 21, 2018 Retreat discussion, Bessler testified Methvin wanted to talk about a recruitment for Lorinda Bush's replacement, as Bush was about to retire and Methvin was trying to convince Bessler to hire Amanda Nelson. Bessler testified Methvin did not say he wanted to talk about a severance package, Bessler did not say "Don't bum me out, my head's not in it," or that they discussed meeting the following week. (Ex. A, 93:2-94:15; Ex. 9, Doc 100-3, p. 19).

### E. The September 24, 2018 Meeting.

In light of the hostile work environment Bessler experienced, his belief Ching was attempting to constructively discharge him, and the effect on his health, Bessler decided to see if he could negotiate a soft exit from Tempe. (Ex. I, ¶5). We know what occurred during the September 24 meeting because Bessler prepared an outline of the talking points he would make when meeting with Methvin, City Attorney Judi Baumann, and his wife, Mary Bessler. (Ex. A, 63:5-25, 64:1-8; Ex. J). During the meeting, Bessler explained that due to Ching's humiliating and belittling him in front of his staff and his sarcasm, Ching was attempting to constructively discharge him and Bessler felt he could no longer work for the City in that environment. He explained some of the situations that occurred during the past three years which had created a hostile work environment. (Ex. K, 11:19 - 17:1). Methvin, with his head down, responded quickly and said he felt like he had let Bessler down and had failed him; Methvin was very upset and both Methvin and Baumann seemed greatly disappointed. Methvin asked what could they do to make Bessler reconsider and said he was sorry. (Ex. K, 17:17-18:7; 18:22-25).

Bessler then explained a possible mechanism to allow he and the City of Tempe to part company through a mutually agreed exit plan in which he asked to announce his retirement in January with an end date of April 2019, the City would buy 14 months of service so he would reach his 10 years of service, payment of one years' severance and payment for health insurance. (Ex. J, ¶6).[3] Bessler then stated he had filed a charge with the EEOC. (*Id.*; Ex. A, 77:9-13). The atmosphere in the room completely changed and it got very, very quiet at that point in the conversation. (Ex. K, 18:11-19). At no time during that meeting, did Methvin or Baumann tell Bessler that a decision to terminate his employment had already been made. (Ex. A, 94:16-24; Ex. K, 37:8-16). Bessler also stated that if he and the City could not come up with mutually agreeable terms, he intended to continue his employment at least until his 10-year anniversary or possibly later. (Ex. K, 37:17-22; Ex. 19, Doc 100-4, p. 47).

### F.  Bessler's Charge of Discrimination is Filed on September 25, 2018.

Bessler had contacted the EEOC on September 6, 2018, received an email from the EEOC about his Inquiry and received an Inquiry Number. (Ex. L). After meeting with the EEOC on September 10, 2018 and submitting an eleven page document on September 11 (Ex. 7, Doc 100-3, p. 2), the EEOC drafted a charge of discrimination which was filed on September 25, 2018. (Ex. 16, Doc 100-4, p. 37).

### G. The September 26, 2018 Meeting.

Two days after the September 24 meeting, on September 26, 2018, Baumann told Bessler that his continued employment with the City was closed, and there was no option in which Bessler would remain employed. (Ex. M). The City made a counteroffer to Bessler. (Ex. O, 47:5-7). Baumann and Methvin attempted to convince Bessler that during the

---

[3] On page 6 of Defendant's Motion, line 20, Defendant states: "He concedes this was an utterance of him trying to resign or retire" and cites Bessler's deposition, (Ex. A, 85:8-13). The citation does *not* support this factual statement as in that citation, Bessler testified: "There was not one utterance of me trying to resign or retire." (Ex. A, 85:10-11).

September 6, 2018 meeting, he had resigned. Bessler then read aloud most of his September 6 Affidavit (*Id.*), disagreeing that he had resigned. Bessler also stated the September 6, 2018 meeting ended with Methvin and Bessler agreeing to work together to keep each other employed at least to their respective 10-year anniversaries. (*Id.*)

### H. The Parties Fail to Reach an Agreement and Bessler is Told His Employment would be Terminated on November 2, with an Effective Date of November 9, 2018.

Bessler took a pre-planned vacation in Spain from October 1-10, 2018. (Ex. K, 32:2-4). On October 11, 2018, Methvin, Baumann and Bessler met again. Methvin asked Bessler when he wanted to leave and Bessler again stated he wanted to work until his 10-year anniversary, July 1, 2020, and that he wanted to lead PW through the accreditation process. The parties continued their discussion about possible severance. (Ex. N; Ex. O, 47:22-48:11).

On October 17, 2018, they met again and Bessler was notified that his last day of physical employment with the City would be November 2, with an effective separation date of November 9, 2018. (Ex. 4, Doc 100-2, p. 102). On October 19, 2018, Bessler filed his retaliation charge with the EEOC. (Ex. 22, Doc 100-5, p. 4). Subsequently, on July 2, 2019, Bessler filed his Complaint asserting age discrimination and retaliation. (Doc. 1).

### I. Genuine Issues of Fact Exist as to Ching's Alleged Reasons for Terminating Bessler's Employment.

In its Motion, the City of Tempe sets forth four different reasons why Ching decided to terminate Bessler's employment: a) concern about the "groveling rule"; (b) other practices with PW; c) the hiring of Amy Marschel; and (d) inconsistent discipline. As the following demonstrates, a jury could readily find those reasons as pretextual, creating genuine issues of material fact.

Ching claims now he had a concern about a practice where Bessler allegedly made employees "grovel" to be able to substitute vacation for leave without pay during discipline. (Doc 100, p. 3). What Ching failed to say is that the Tempe Personnel Rules leave the

decision to substitute vacation for leave without pay during discipline to the discretion of the Department Directors. (Ex. G). Due to this policy, Bessler was uncomfortable with employees sharing a litany of personal reasons for the request. This issue was discussed at a directors' meeting in 2016/2017 and Ching decided to do nothing and continued to leave the decision to the Directors of individual departments. (Ex. I, ¶4). This issue occurred 1-2 years before the termination decision and Ching admits he did not speak to Bessler about this issue after the 2016/2017 meeting or that any subsequent "groveling" occurred. (Ex. F, 86:13-88:9).

Another of the alleged reasons for termination was Ching's concern that Bessler created a significant degree of bureaucracy within PW which involved the delegation of traditional Human Resources ("HR") duties to individuals who worked executive or management assistant level employees. (Ex. F, 89:24-90:22). The evolution of this alleged bureaucracy was best described by Lorinda Bush, PW Manager of Administration-Employee Relations, where she explained Bessler never implemented a separate, quasi-HR Department and that she was a liaison between PW and HR since 2003, predating Bessler being hired in 2010. (Ex. B, 15:3-8;124:14-126:8). Ching never discussed such claimed concern with Bessler. (Ex. F, 91:25-92:4).

Ching testified he had concerns about Bessler's inconsistent discipline imposed on employees Rosenthal, Miano and Browne. However, the record is clear that Ching made the final decisions with respect to the disciplinary action received by each, raising a fact issue on pretext. (Ex. F, 50:24-51:24; 56:17-61:24; 68:22-71:3).

Ching also testified he learned after the fact that Amy Marschel, manager in Solid Waste, was hired because she was close personal friends with the Bessler family. (Ex. F, 90:23-91:11). Bessler's Declaration describes the relationship between Marschel and the Besslers and that all City hiring practices were followed. (Ex. I, ¶3). In fact, Marschel was hired in May 2017, 16 months before the termination decision, and Ching admits he never discussed his alleged concern with Bessler. (Ex. C, 8:24-9:9; Ex. F, 92:20-24).

In light of the above, a jury could reasonably find the City of Tempe lacks credibility because Bessler casts substantial doubt on many of the employer's multiple reasons.

### J. Mitigation of Damages

Defendant notes Bessler's 2018 W-2 reflects that he received $180,552.29 from Tempe. (Doc. 94, p. 4, lines 3-4). However, that figure includes a $34,567 payout of accrued vacation time paid by Tempe when Bessler's employment terminated in 2018. (Ex. P).

## II.   SUMMARY JUDGMENT STANDARD

As this Court noted a few months ago:

> At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted). That said, *"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."* *Scott v. Harris*, 550 U.S. 372, 380 (2007).

*Flores v. Am. Airlines Inc.*, 2020 WL 6585535, at *2 (D. Ariz. Nov. 10, 2020) (emphasis added). In evaluating motions for summary judgment for employment claims, the Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004); *see also, Chuang v. University of California Davis Bd. Of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("the plaintiff in an employment discrimination action need produce very limited evidence in order to overcome and employer's motion for summary judgment.").

/ / /

### III.     LEGAL ARGUMENT

#### A. Bessler Establishes a Prima Facie Case of Retaliation.

Bessler brings his retaliation claim pursuant to the ADEA. The Ninth Circuit applies the same standard in retaliation cases under both the Title VII and ADEA. *See Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir. 1997). To establish a prima facie case of retaliation Bessler must establish: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 693 (9th Cir. 2017). If Bessler establishes a prima facie case, "the burden then shifts to [the City of Tempe] to advance a legitimate, nonretaliatory reason for any adverse employment action." *Id.* If the City of Tempe meets that burden, Bessler then has the "ultimate burden" of showing that the proffered reason is pretextual. *Id*.

In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) the Court held that an ADEA plaintiff is required to establish "but for" causation to prevail on an ADEA claim and in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Court held "but for" causation is necessary to prevail on a retaliation claim under Title VII. As explained below, the Supreme Court further clarified the but-for causation standard last term in *Bostock*.

#### 1. Protected Activity and Reasonable Belief.

Defendant claims Bessler did not engage in protected activity by disclosing to Methvin and Bauman on September 24, 2018 that he had "contacted the EEOC to file a charge of discrimination," but failed to allege he actually filed a charge by that date. (Doc. 100, 11:13-17). Defendant's myopic, misguided view of the anti-retaliation provision of Title VII misses the mark.

Under Title VII, a protected activity is defined to mean either (1) an "employee's participation in the machinery set up by Title VII to enforce its provisions" (the participation clause), or (2) an "employee's opposition to conduct made an unlawful employment practice

-12-

[under Title VII]" (the opposition clause. *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). The Ninth Circuit noted:

> "The considerations controlling the interpretation of the opposition clause are not entirely the same as those applying to the participation clause. The purpose of the latter is to protect the employee who utilizes the tools provided by Congress to protect his rights." *Sias v. City Demonstration Agency,* 588 F.2d 692, 695 (9th Cir. 1978).

Defendant contends Bessler did not engage in protected activity because his Charge was not filed until September 25, 2018 – Defendant is wrong as it is undisputed Bessler interviewed with the EEOC on September 10, 2018 and submitted an eleven page factual summary on September 11, 2018 (Ex. 7, Doc 100-3, p. 2; Ex. L) so the EEOC could draft his charge of discrimination. In *Hashimoto*, the Ninth Circuit has held that contacting the EEOC constitutes participation "in the machinery set up by Title VII." As such, it was protected activity. *Hashimoto*, at 980.

An individual engages in protected activity under Title VII when the individual has a "reasonable belief" that the employment practice being opposed is prohibited under Title VII. *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). Establishing that an employee had a "reasonable belief" that he was opposing unlawful conduct involves a twofold showing. First, the employee must show that he subjectively believed the employer's conduct was unlawful at the time. Second, the employee's subjective belief must have been objectively reasonable. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000-1001 (9th Cir. 2009) (SOX).

From Bessler's testimony and his affidavits, it is undisputed that he truly believed Ching created an intolerable hostile work environment due to his age. Unlike the plaintiff in *Learned v. Bellevue*, 860 F.2d, 928 (9th Cir. 1988), who filed an EEOC charge of discrimination based on physical and mental limitations, rather than membership in any protected class, Bessler is protected from discrimination under the ADEA. An employee's testimony that he suspected the conduct complained of violated the law at the time is

evidence of his subjective belief and is generally sufficient to raise a genuine issue of fact regarding that element of the claim. *See Van Asdale*, 577 F.3d at 1002 (concluding that plaintiff's testimony regarding her subjective "belief that an investigation [into shareholder fraud] needed to occur" was sufficient to reverse summary judgment in the employer's favor). "An erroneous belief that an employer engaged in an unlawful employment practice is *reasonable*, and thus actionable ... if premised on a mistake made in good faith." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994) (emphasis in original).

The reasonableness of [an employee's] belief that an unlawful employment practice occurred must be assessed according to an objective standard - one that makes due allowance, moreover, for the limited knowledge possessed by most [ADEA] plaintiffs about the factual and legal bases of their claims. *Id*. Bessler's subjective relief was objectively reasonable in light of Weaver, Moira, Sidi and Bush all confirming Ching's mistreatment of Bessler.

### 2. Bessler Suffered Adverse Employment Action.

It is undisputed that Bessler suffered adverse employment action when he was first told on September 26, 2018 that his employment would end before the end of 2018 and notified on October 17 that his effective date of termination would be November 9, 2018.

### 3. Causal Link.

Having established that he engaged in protected activity when he contacted the EEOC on September 10-11, 2018, and that he suffered an adverse employment action when he was told by Baumann on September 26 that his employment would not continue, Bessler must complete his prima facie case by establishing a causal link between the protected activity and the termination. To show a causal link between an alleged protected activity and an adverse employment action, a plaintiff must show that the protected activity constituted a "but-for cause" of the employer's adverse employment action. *Bostock.*

The Ninth Circuit and this District use a bright-line rule that two to three months between the protected activity and an adverse action is sufficient to create the causal connection to overcome summary judgment. *See Santillan v. USA Waste of California,*

*Inc.,* 853 F.3d 1035 (9th Cir. 2017) (two months between the protected activity and adverse employment was, standing alone, sufficient to prove the causal connection between the two events); *Ramirez v. Mitel (Delaware) Inc.,* 2017 WL 770010 (D.Ariz. Feb. 28, 2017) (temporal proximity of less than three months is enough for an employee to establish causation based on timing alone). Timing is relevant in a determination of causation in retaliation cases and "*can be sufficient by itself to constitute sufficient circumstantial evidence of retaliation for the purpose of both the prima facie case and the showing of pretext*." *Reynaga,* 847 F.3d at 694. (emphasis added).

Bessler informed Methvin and Baumann of his protected activity in the afternoon of September 24, 2018 and 48 hours later, on September 26, Bessler was informed that he was no longer going to be employed by the City. This temporal proximity between the protected activity and the adverse employment action, together with evidence that the room got very, very quiet after Bessler disclosed his EEOC filing, can provide sufficient circumstantial evidence of retaliation. *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003).

Defendant argues Bessler's protected activity could not be the but-for cause as required by *Gross* and *Nassar* because the termination decision was allegedly made (but not communicated to Bessler) on September 10, 2018, prior to Bessler informing the City of Tempe of his contacting the EEOC.[4] Bessler disputes that Methvin discussed severance with him from September 10 through September 24, and if a termination decision had been made, it was not communicated to Bessler until September 26, 2018, two days after the City learned of Bessler's EEOC charge.

Defendant would require Bessler to prove his protected activity, and not the City's proffered reason, "was the but-for cause" of his termination. However, that framing of

---

[4] Tellingly, Ken Jones has submitted a declaration that he participated in a September 10, 2018 meeting when the decision to terminate was allegedly made. However, the City's Response to Non-Uniform Interrogatories, under oath by the Assistant City Attorney, states only that Ching and Methvin were involved and no mention of Jones is set forth. (Ex. Q).

the issue flouts the well-accepted principle announced last term in *Bostock* that "[o]ften, events have multiple but-for causes," and therefore, "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some factor that contributed to its challenged employment decision." *Bostock.* To satisfy this "traditional" standard, Bessler need only show that his protected activity "was *one* but-for cause of that decision." *Id.* (emphasis added). A jury could readily conclude that Bessler's protected activity was *a* but-for cause of his termination because on September 24, 2018 neither Methvin or Baumann told Bessler a termination decision had already been made, Methvin had not discussed potential severance with Bessler prior to that time, and 48 hours after learning of the EEOC charge, Bessler was told his employment would end..

### 4. The City Has Articulated a Non-Retaliatory Reason for Bessler's Termination.

Bessler concedes the City has articulated a non-retaliatory reason for Bessler's termination.

### 5. Genuine Issues of Material Fact Exist Concerning the City's Non-Retaliatory Reason for Bessler's Termination.

Because he has no "direct evidence," Bessler must provide "specific and substantial" circumstantial evidence of pretext to survive summary judgment. *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). The court considers the evidence of pretext cumulatively and "in the context of [ADEA] claims, the burden on plaintiffs to raise a triable issue of fact as to pretext is hardly an onerous one." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007).

Bessler raises issues of fact on the issue of pretext. First, the proximity in time "can be sufficient by itself to constitute sufficient circumstantial evidence of retaliation for the purpose of both the prima facie case and the showing of pretext." See *Reynaga*, 847 F.3d at 694. Second, several of Ching's articulated reasons for termination occurred a year or more before the termination decision was made, *i.e.*, creating a HR "bureaucracy," hiring Amy

Marschel, and the "groveling" concern. At no time was Bessler warned or disciplined about these issues and there was no "groveling" as set forth in Bessler's declaration. (Ex. I ¶3, 4; Ex. B, 15:3-8;124:14-126:8). Third, Ching testified Bessler's inconsistent discipline for three employees was a reason for termination, yet Ching made the final decisions concerning those disciplinary actions, not Bessler. (Ex. F, 50:24-51:24; 56:17-61:24; 68:22-71:3). Fourth, pretext can be established if there is no written documentation reflecting any deficient job performance by Bessler. (Ex. E, 16:10-18). *See*, *Riddle v. Washington*, 454 Fed. Appx. 613, 615, (9th Cir. 2011); *Ramirez v. Kingman Hospital Incorporated*, 2019 WL 1242655, at *15 (D. Ariz. 2019); *Lewis v. Peakes*, 2010 WL 5059607, at *11 (E.D.Cal. Dec. 3, 2010) (noting lack of documentary evidence may be sufficient circumstantial evidence to support an inference of pretext sufficient to defeat summary judgment). Fifth, Ching testified that prior to September 6, 2018 when Methvin provided him false information that Bessler wanted to resign and receive a severance package, Ching had not told Methvin, Bessler's supervisor, he had made a final decision to terminate Bessler. Indeed, the month before Ching admitted he told Bessler he had years left to work with the City. (Ex. F, 50:18-23).

Taking the facts in the light most favorable to Bessler, the combination of the temporal proximity between Bessler's protected activity and termination, the testimony, affidavits and declaration of Bessler, and the issues of fact concerning but-for causation, Bessler has provided specific and substantial circumstantial evidence sufficient to create a genuine dispute of material fact.

### IV.   CONCLUSION

Defendant's Motion should be denied.

/ / /

DATED this 26th day of March 2021.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Tod F. Schleier
Tod Schleier
Attorneys for Plaintiff

I certify that on this 26th day of March 2021, I electronically filed the foregoing with the U.S. District Court Clerk using the CM/ECF system, which shall send notification of such filing to:

Greg Coulter, Esq.
JACKSON LEWIS
2111 E. Highland Avenue, #B250
Phoenix, AZ  85016
Attorney for Defendant

/s/ Cindy J. Anderson