J. Greg Coulter (State Bar No. 016890)
J. Alexander Dattilo (State Bar No. 030112)
**JACKSON LEWIS P.C.**
2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
Telephone: (602) 714-7044
Facsimile: (602) 714-7045
Greg.Coulter@jacksonlewis.com
Alexander.Dattilo@jacksonlewis.com
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Bessler, a married man,<br><br>            Plaintiff,<br><br>    v.<br><br>City of Tempe, an Arizona municipal corporation,<br><br>            Defendant. | Case No: 2:19-cv-04610-MTL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**(Assigned to the Honorable Michael T. Liburdi)**<br><br>**Oral Argument Requested** |

[PAGE INTENTIONALLY LEFT BLANK]

Defendant City of Tempe ("Tempe") submits its reply in support of its Motion for Summary Judgment ("MSJ") on plaintiff Donald Bessler's ("Bessler") retaliation claim brought under the Age Discrimination and Employment Act ("ADEA"). The undisputed facts entitling Tempe to summary judgment are simple. By September 6, 2018, due to concerns about Bessler's management and leadership as Director of Public Works, City Manager Andrew Ching ("Ching") had concluded his employment needed to end – and when Deputy City Manager ("DCM") Steven Methvin ("Methvin") told him that Bessler had just expressed a desire to leave his job, Ching decided that he would separate his employment. On September 10, Ching discussed this decision with Methvin and DCM Ken Jones ("Jones") and told Methvin to ask Bessler what he wanted in a severance package. Within 24 hours, Jones disclosed this to Internal Services Director Rene Broderick ("Broderick"). Bessler evaded Methvin's efforts to discuss separation – until September 24, when *Bessler* proposed terms for his separation to Methvin and City Attorney Judith Baumann ("Baumann") and said he had filed an EEOC charge alleging age discrimination. Bessler cannot withstand summary judgment, as he does not dispute these events or that Tempe decided to separate his employment before September 24.

The Response fixates on immaterial facts and gins up the *appearance* of factual disputes where none genuinely exist by relying only on Bessler's uncorroborated testimony. Meanwhile, Ching's testimony that shows he decided on separation before September 24 is corroborated by: (1) declarations of Methvin, Jones, and Broderick, who knew of the decision before then; (2) Ching's and Methvin's text messages sent while finalizing the separation before then; and (3) Bessler's admission that he proposed terms of his own separation. The legal deficiencies with Bessler's retaliation claim are also simple. He never engaged in "protected activity," as he never had a good faith, "objectively reasonable" belief that the conduct he complained of violated the ADEA – and identifies no facts to justify such a belief. Ching's separation decision also was not an adverse employment action; separation was mutually desired when decided on. Moreover, it is impossible for Bessler to carry his demanding burden to prove *but-for*

causation, because the separation decision preceded all "protected activity." Yet Bessler argues *but-for* causation is shown merely by temporal proximity between (1) when *he learned* of the separation decision (not when it was made) and (2) his alleged "protected activity." Even if the concept applied, temporal proximity alone could not show *but-for* causation. Bessler fails to establish a *prima facie* case, concedes Tempe's reasons for separation are non-retaliatory, and identifies no evidence of pretext. All material facts are undisputed and point to the only sensible outcome: dismissal.

I.   **BRIEF FACTUAL SUMMARY**

   A.   **Ching became increasingly frustrated with Bessler's performance and often expressed concern over his ability to manage and lead the PWD.**

In 2010, Tempe hired Bessler as Director of its Public Works Department ("PWD"). After Ching was appointed City Manager in 2013, he appointed Methvin and Jones as DCMs. During their weekly meetings with Ching in the years and months preceding Bessler's separation, they saw him grow increasingly frustrated with Bessler's performance. [**Ex. 27** at ¶¶ 3-4; **Ex. 28** at ¶¶ 3-4; **Ex. 29** at ¶¶ 3-4] Ching frequently expressed concerns about Bessler, became progressively more vocal about this, and expressed diminished confidence in him. [*Id.*] Many events fueled this deteriorating opinion of Bessler, including but not limited to: (1) his decision to hire a close family friend who had no public sector experience; (2) his "Groveling Rule," where employees facing suspension who wanted to use vacation time in lieu of unpaid time off had to appear before him to admit their actions were wrong; and (3) his creating an untenable bureaucratic structure in the PWD. [*See* Dkt. 100 at pp. 2-4 (*supporting facts above*)]

   B.   **On September 6, 2018, Ching heard that Bessler wanted to leave his job, and decided that his employment would be separated.**

When Methvin met with Bessler on September 6, 2018, he expressed concern about Bessler's job security due to Ching's criticisms, and warned he was "*on thin ice*." Bessler then shared that he found his employment situation "*intolerable*," and expressed that he wanted to leave his job with a severance package to "*at least get to retirement*." Methvin told Bessler to consider terms for a severance package. Unsurprisingly, by then Ching's concerns had caused him to independently conclude Bessler's employment

should end. [**Ex. 28** at ¶¶ 6-7] Ching's concerns were such that if Bessler had not expressed a desire to leave Tempe, he would have terminated him involuntarily. [*Id*. at ¶ 7] When Methvin approached Ching that day and told him Bessler had just said he wanted to leave Tempe, Ching saw this as a positive, and decided his employment would be separated due to (1) his understanding that Bessler wanted to leave Tempe; and (2) pre-existing concerns about Bessler's leadership and management of the DPW. Ching wanted Bessler's exit to be amicable, but not prolonged. On September 10, Ching discussed the separation decision with Methvin and Jones – who agreed with it – and he told Methvin to learn what Bessler wanted in a severance package. Within 24 hours, Jones disclosed the decision to Broderick: a fourth person aware of the impending separation. Bessler does not genuinely dispute the forgoing facts.[1] [Dkt. 100 at pp. 4-5]

**C.     Bessler proposed terms for his own separation on September 24, 2018.**

Methvin then tried to meet privately with Bessler. On September 21, 2018 – after cancellations of one-on-one meetings they had agreed to – Methvin found Bessler at a City Council Retreat, said he wanted to continue their discussion on separation, and granted Bessler's request to postpone it until the next week. Methvin then sent messages to Ching stating: "*We committed to talk early next week. He's worn out*," and "*We will get to a good place as long as we don't rush it. I appreciate that we have some time*." [Dkt. 100 at pp. 5-6] Of the forgoing, Bessler's Response only disputes that he and Methvin "*discussed meeting the following week*." [*Id*. at p. 7]

Bessler organized a meeting in his office on September 24, 2018 with Mary Bessler (his wife), Methvin, and Baumann. During the meeting – and consistent with Methvin's prior report to Ching – Bessler stated that he could not continue working for Tempe, "*wanted to leave*," and intended "*to find a soft exit out of the city at that point*."[2] He added that he already believed Ching wanted to discharge him. [Response at p. 17]

---

[1] Bessler claims that he never said he "*wanted to leave his City of Tempe employment*" or "*resign*," but never disputed he expressed this desire (through other words), as alleged.

[2] As to the meeting, Bessler testified: "*There was not one utterance of me trying to resign or retire, <u>other than</u> me bringing up at that point what I thought might be a way for me to do a soft exit*." [Dkt. 100 at p. 6 (emphasis added)] The Response truncates the statement. *Id*. at p. 8, n3.

1  He then <u>falsely</u> claimed to have filed an EEOC charge, which he said he had done "*to*
2  *ensure Andrew* [*Ching*] *doesn't lose his mind and fire me*," adding: "*That's the only*
3  *reason for doing it*." [**Ex. 27** at ¶ 14; **Ex. 13** at TEMPE.002660] In a message he sent to
4  Ching later that day, Methvin wrote: "*...I've been talking with him since I m*[*e*]*t with*
5  *Ken and you. He is aware of where this was going*" – and Ching replied: "*Got it. Wasn't*
6  *sure how much was shared*." [Dkt. 100 at pp. 6-7] <u>Bessler has not identified any genuine</u>
7  <u>factual dispute regarding this meeting or these communications</u>. He alleges that at the
8  meeting, Methvin asked "*what could they do to make Bessler reconsider*," without
9  clarifying what he wanted reconsidered, and while citing only Mary Bessler's vague,
10 speculative testimony about what she "*sense*[*d*]" Methvin hoped for – <u>not</u> what he said.[3]

11     **D.**    **Bessler's September 25 Charge failed to allege facts reflecting a reasonable belief he was complaining of age discrimination.**

12 Bessler filed his charge (the "Charge") on September 25, 2018, wherein he
13 asserted age discrimination based on Ching treating him unfavorably for being "*the most*
14 *experienced employee*," and surmised "[*e*]*xperience only comes with age*." Meanwhile,
15 Methvin and Baumann continued to negotiate a severance package with Bessler. When
16 they met with him on September 26, they clarified that his last day of employment
17 would be in 2018. After Bessler's 10-day absence from work, Methvin and Baumann
18 met with him on October 11 and continued negotiations. On October 17, they told him
19 November 2 would be his last day of physical employment. [Dkt. 100 at pp. 7-8]

20 **II.**    **ARGUMENT**
    **A.**    **Bessler has failed to demonstrate any genuine issue of material fact.**
21         **1.**    **The Response fails to identify any issue of *material* fact.**

22 Where the response claims factual disputes exist, it fails to identify any real
23 inconsistencies between Bessler's allegations and the MSJ, and invariably fixates on
24 immaterial facts. For example, it "*disputes that Methvin discussed severance with*
25 [*Bessler*] *from September 10 through September 24*" <u>without</u> disputing that Methvin
26 tried to meet with him privately. *Id*. at p. 15. Similarly, it claims the MSJ alleged Ching
27 made the separation decision on September 10 (not September 6), claims that Ching's
28

---

[3] Mary Bessler stated: "*And my sense was that they were hoping to have a conversation that would maybe make* [*Bessler*] *reconsider*." [Dkt. 101, Ex. K, 17:24-18:1]

testimony and declaration are inconsistent (without identifying actual inconsistencies), and asserts "*if a termination decision had been made, it was not communicated to Bessler until September 26.*" *Id*. Even if true, none of these allegations advance facts potentially dispositive to the outcome. *Matson v. Safeway, Inc.*, 2013 WL 6628257, at *1 (D. Ariz. 2013) (A material fact is one that might affect outcome). <u>Critically, the Response does not dispute that the separation decision was made before September 24</u>.

### 2. The Response fails to show any *genuine* factual disputes.

Bessler desperately tries to manufacture the *appearance* of factual disputes with allegations supported exclusively by his self-serving testimony that is conclusory, speculative, and unsupported by corroborating evidence. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) ("uncorroborated and self-serving" testimony does not present "*genuine* dispute" of material fact); *Morley v. J.W. Robinson's Inc.*, 967 F.2d 588 (9th Cir. 1992) ("declarations that are either conclusory or hearsay" cannot demonstrate genuine factual dispute); *Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, 2014 WL 4371284, at *2 (D. Ariz. 2014) ("The non-movant's bare assertions" alone cannot create an issue of fact), aff'd, 670 F. App'x 956 (9th Cir. 2016).

The Response also fails to advance allegations with actual proof. For example, it alleges that on September 6, 2018, Bessler "*never stated he wanted to leave…*" his job, citing only his uncorroborated affidavit. [*Id*. at p. 6] This only begs questions he fails to answer, including why on September 24 he would otherwise: (1) propose terms for his *own* separation and (2) state he wanted to leave Tempe. [Dkt. 100 at p. 6] Bessler does <u>not</u> dispute that Methvin told Ching on September 6: "…*Bessler wanted to resign and receive a severance package*." [Response at p. 17] Whether Bessler actually said this is immaterial, as Ching reasonably relied on the information he received. *See Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 128 (1st Cir. 2017) (only "the facts available to the decision-maker at the time of the employment decision" are relevant).

### B. The Response fails to establish a *prima facie* case of ADEA retaliation.
### 1. The age discrimination complaint was not "protected activity."

Bessler's Complaint alleges that Tempe retaliated against him because he

5

1   "*notif*[*ied*] [*Methvin and Baumann*] *on September 24, 2018 that he had contacted the*
2   *EEOC to file a Charge of discrimination*." [Complaint at ¶ 60] He must carry his burden
3   to prove this <u>false</u> representation was "protected activity" under the "opposition clause"
4   (the Response argues it was). *Id*. at pp. 13-14.[4] As the MSJ states, Bessler's Charge
5   asserted age discrimination based on his purported belief that Ching treated him less
6   favorably due to his *experience* – which, he surmised, was necessarily due to his age. To
7   show that he engaged in "protected activity" under the ADEA, Bessler must prove he
8   had <u>both</u> a subjective and "objectively reasonable" belief that Ching's conduct
9   complained of in the Charge violated the ADEA. *See Learned v. Bellevue*, 860 F.2d 928,
10  932 (9th Cir. 1988) (conduct complained of "must be reasonably perceived as
11  discrimination" prohibited by law for complaint to be "protected activity"); *Maner v.*
12  *Dignity Health*, 350 F. Supp. 3d 899, 909 (D. Ariz. 2018) (same). Bessler acknowledges
13  that he has this burden of proof – but fails to carry it. *Id.* at pp. 13-14.

14  Bessler has not even shown that when he filed the Charge, he *actually* believed he
15  was complaining of conduct that violated the ADEA. The Response asserts "[*f*]*rom*
16  *Bessler's testimony and affidavits it is undisputed*" that he believed he was subjected to
17  age discrimination. *Id.* at p. 13. <u>Yet the Response neither alleges that Bessler actually</u>
18  <u>believed this when he filed the Charge, nor cites "*testimony and affidavits*" to prove it.</u>
19  *Id.* The Response further asserts that such evidence "*is generally sufficient to raise a*
20  *genuine issue of fact regarding that element of the claim*," and only cites a decision
21  inapplicable to ADEA retaliation claims. *See id.* at pp. 13-14, citing *Van Asdale v. Int'l*
22  *Game Tech.*, 577 F.3d 989 (9th Cir. 1994) (adjudicating SOX claim under 18 U.S.C. §
23  1514A). Moreover, Methvin's notes and declaration show Bessler said he only filed a
24  charge to ensure Ching would not "*lose his mind and fire me*." By admitting his <u>only</u>
25  motivation was tactical – *i.e.*, to stave off impending separation and create negotiating
26  leverage – he conceded he lacked a subjective, good faith belief.

27
28  [4] The Response alleges Bessler engaged in "protected activity" before September 24 by contacting the EEOC. *Id*. at p. 13. Bessler has never alleged that Tempe knew of of "protected activity" before September 24; he cannot introduce the theory now. *Russell v. Pac. Motor Trucking Co*., 672 F. App'x 629, 631 (9th Cir. 2016).

1  Likewise, Bessler has failed to prove he had an "objectively reasonable" belief
2  that Ching's alleged conduct violated the ADEA. <u>The Response fails to identify any
3  facts complained of in the Charge that would have caused a reasonable person in
4  Bessler's position to believe they were subjected to age discrimination</u>; it refers only to
5  what Bessler allegedly felt or said. Moreover, he clearly conflated age and experience in
6  the Charge, but later testified these are distinct "*concepts*" that are "*not inseparable*."
7  [Dkt. 100 at pp. 12-13] In admitting this, he conceded that his purported belief – *i.e.*, that
8  experience level is a protected class – was unreasonable. He also cites no law to support
9  his purported belief that "experience discrimination" is unlawful, because it is not. *See
10 Rhinehart v. IBM*, 124 F. 3d 212 (9th Cir. 1997) (applying different criteria to evaluate
11 more experienced employees" not age discrimination). The belief was therefore not
12 "objectively reasonable." *See Maner*, *supra* (no "objectively reasonable" belief when
13 federal courts did not recognize complained-of conduct as unlawful). Bessler
14 presumably withdrew his age discrimination claim because he knew this. Furthermore,
15 Broderick – a department director *older* than Bessler – never felt Ching treated her less
16 favorably than others. [Dkt. 100 at pp. 12-13, **Ex. 30** at ¶¶ 2-3, 8] The Response failed to
17 even address this, much less explain how Bessler could have reasonably believed Ching
18 bore age animus against him, but not Broderick. <u>The Response ignored all the forgoing
19 arguments contained in the MSJ, thereby conceding the validity of Tempe's position.</u>[5]

20 The Response glosses over the "objective reasonableness" issue with a single
21 sentence applying law to fact: it merely argues that Bessler's purported belief in age
22 discrimination "*was objectively reasonable in light of Weaver, Moira Sidi and Bush*[6] *all
23 confirming Ching's mistreatment of Bessler.*" [*Id*. at p. 14] The opinions of Bessler's
24 former co-workers on whether Ching "mistreated" him are irrelevant to whether he had
25 an "objectively reasonable" belief that Ching's complained-of conduct violated the

---

[5] *See McGrath v. City of Avondale*, 2014 WL 2882924, at *4 (D. Ariz. 2014) (failure "to even address or present an argument in opposition to" request for summary judgment deemed waiver); *Foster v. City of Fresno*, 392 F. Supp. 2d 1140, 1146 n.7 (E.D. Cal. 2005) ("failure to address" in response to motion for summary judgment was waiver).
[6] Bessler omitted Lorinda Bush in identifying witnesses.[Dkt. 100 at pp. 9-10].

7

1 ADEA. As the MSJ explains, none even have personal knowledge about facts relevant to
2 *why* Ching allegedly treated Bessler unfavorably; their inadmissible opinions have no
3 probative value. [MSJ at pp. 9-10] Bessler's belief was otherwise founded only on
4 alleged statements by Ching and Methvin attributing treatment to Bessler's experience.
5 Therefore, <u>Bessler has identified no facts supporting an "objectively reasonable" belief</u>.

6 The Response concedes *Learned* controls, and only argues it is distinguishable
7 because here the Charge used "magic words" identifying a protected class to label the
8 complained-of conduct. [*Id*. at p. 13] This is a superficial distinction; the underlying
9 conduct on which the complaint was based is what the Court should evaluate.
10 "Under *Learned*, complaints about conduct are not protected for purposes of a retaliation
11 claim unless the <u>conduct</u> 'fairly fall[s] within the protection of Title VII.'" *Maner*, 350
12 F. Supp. 3d at 908 (complaint of sex discrimination based on "paramour favoritism" not
13 supported by "objectively reasonable" belief that favoritism was unlawful) (emphasis
14 added). The conduct Bessler complained of was disparate treatment due to *experience* –
15 not membership in a protected class. He could not have reasonably believed Ching's
16 conduct violated the ADEA, and he cannot show objective reasonableness. *See id*, *supra*.

17 **2.    The separation decision was not an adverse employment action.**

18 Tempe's separation decision was made after Bessler expressed a desire to leave
19 Tempe on September 6, 2018 – consistent with *his* proposal for separation on September
20 24 when he reiterated this. The separation did not morph into a termination merely
21 because Tempe rejected the conditions he later tried to place on his resignation. *See*
22 *Yardley v. ADP TotalSource, Inc.*, 2014 WL 1494105 (C.D. Cal. Mar. 12, 2014) (forcing
23 separation sooner than employee wanted did not constitute termination).

24 **3.    Bessler cannot establish *but-for* causation, as he has no evidence proving "protected activity" was the *but-for* cause of separation.**

25 Bessler has failed to satisfy his demanding burden to show *but-for* causation, as
26 he failed to produce evidence demonstrating that *but for* him engaging in protected
27 activity, his separation would not have occurred. *Villiarimo v. Aloha Island Air, Inc.*,
28 281 F.3d 1054, 1064-65 (9th Cir. 2002). "[T]he 'but for' causation requirement at issue

in retaliation claims is more stringent than the 'motivating factor' standard at issue in discrimination claims." *Valtierra v. Medtronic Inc.*, 232 F. Supp. 3d 1117, 1126 (D. Ariz. 2017), citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013); *Coleman v. Home Health Res. Inc.*, 269 F. Supp. 3d 935, 945 (D. Ariz. 2017) (ADEA plaintiff must show "protected activity" was more than mere "motivating factor" in retaliation), citing *Nassar*, *supra*. Bessler has not even identified evidence sufficient to satisfy the "motivating factor" standard of causation.

<u>The Court need not look further than the undisputed fact that Tempe's separation decision preceded any protected activity, which made retaliation temporally impossible.</u> *Shields v. Frontier Tech., LLC*, 2012 WL 12538963, at *4 (D. Ariz. 2012) ("[A] claim for retaliation cannot lie where the alleged protected activity…took place after the alleged adverse employment action"); *Quinones v. Potter,* 661 F. Supp. 2d 1105, 1128 (D. Ariz. 2009) ("[P]rotected activities that occur subsequent to alleged retaliatory acts cannot support a causal link…"), citing *Timmons v. United Parcel Service, Inc.*, 310 Fed. Appx. 973, 975 (9th Cir. 2009) (employer "could not have retaliated" because adverse actions occurred before any "protected activities").

The Response fails to identify <u>any</u> proof of *but-for* causation, identifying only: (1) "*temporal proximity between the protected activity and the adverse employment action*" and (2) "*evidence that the room got very quiet after Bessler disclosed his EEOC filing.*" *Id*. at pp. 14-15. Said "*evidence*" is merely Mary Bessler's opinion on room acoustics during the September 24, 2018 meeting; the Response fails to explain how this establishes *but-for* causation, which it clearly does not. Bessler's reliance on temporal proximity is equally misplaced, as Tempe's separation decision preceded any "protected activity," and Tempe was never even aware that he engaged in any before September 24.

<u>Even if Bessler could show "protected activity" preceded the separation decision *and* that Tempe was aware of it when deciding on separation, it would not prove *but-for* causation</u>. As a matter of law, even a short duration between "protected activity" and a *subsequent* decision to take adverse action is not enough to establish *but-for* causation.

*See*, e.g. *Gray v. Motorola, Inc.*, 2009 WL 3173987 (D. Ariz. 2009) (dismissing ADEA retaliation claim; employee provided no evidence of *but-for* causation, "direct or circumstantial, other than temporal proximity"); *Drottz v. Park Electrochemical Corp.*, 2013 WL 6157858, at *47 (D. Ariz. 2013) (mere "evidence of knowledge and proximity in time" without "other evidence supporting *but-for* causation" cannot defeat summary judgment), citing *Nassar,* 133 S.Ct. at 2534. Numerous decisions apply this rule.[7] The more recent ones explain the "post-*Nassar* standard":

> "Under the pre-*Nassar* 'motivating factor' test, evidence of knowledge and proximity in time, together, *could have been* sufficient for the Court to find a disputed issue of fact on causation." *Drottz*, 2013 WL 6157858, at *15 (citation omitted and emphasis added). "Post-*Nassar*, however, 'while knowledge and proximity in time certainly remain relevant when inferring but-for causation,' they cannot form the sole basis on which an employee may satisfy his or her *prima facie* burden."

*Green v. City of Phx.*, 2019 WL 4016484, at *12 (D. Ariz. 2019); *Lucas v. Tempe Union High Sch. Dist.*, 2019 WL 3083010, at *11 (D. Ariz. 2019) ("While previously sufficient under Ninth Circuit law, the Supreme Court recently clarified" that temporal proximity plus knowledge of protected activity is insufficient), citing *Isom*, *supra*. This cannot even show "retaliation was a motivating factor." *Id.*

Ignoring the forgoing law, Bessler baselessly asserts that there is a "*bright-line rule that two to three months between protected activity and adverse action is sufficient to create the causal connection and overcome summary judgment.*" *Id.* at pp. 14. The Response fails to cite a single decision applying this purported "bright-line rule" to find an employee established *but-for* causation merely with temporal proximity.[8] It also fails

---

[7] *See*, e.g. *Mitchell v. Superior Court*, 312 F. App'x 893, 895 (9th Cir. 2009) (affirming dismissal of retaliation claim; if mere temporal proximity showed but-for causation, employee complaints would be tantamount to "a 'get out of jail free' card"); *Shaninga v. St. Luke's Med. Ctr. LP*, 2016 WL 1408289, at *11 (D. Ariz. 2016) (it "takes more than allegations of knowledge and temporal proximity to demonstrate but-for causation…"), citing *Nassar*, *supra*; *Fleming v. IASIS Healthcare Corp.*, 151 F. Supp. 3d 1043, 1055 (D. Ariz. 2015) (timing alone cannot prove but-for causation); *Isom v. JDA Software Inc.*, 2015 WL 3953852, at *12 (D. Ariz. 2015) (temporal proximity alone cannot show "motivating factor," much less but-for causation).

[8] *See id*, citing *Santillan v. United States Waste of Cal.*, 853 F.3d 1035 (9th Cir. 2017) (not applying but-for causation to state law claim); *Ramirez v. Mitel (Del.) Inc.*, 2017 WL 770010 (D. Ariz. 2017) (dismissing retaliation claim); *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017) (not applying but-for causation or relying on only

to square Bessler's causation argument with his statement to Methvin and Baumann that "*Ching was attempting to…discharge him*" – made <u>before</u> he engaged in protected activity. [Dkt. 101 at p. 7] It contradicts his theory that he would have remained employed, but-for engaging in "protected activity." *See Drottz*, 2013 WL 6157858, at *12 (court "cannot ignore undisputed facts that…contradict Plaintiff's claims").

After Bessler filed his Response, he filed a "Notice of Supplemental Authorities," wherein he tried to downplay the dispositive nature of the *but-for* causation requirement, stating: "*Proof issues like 'but for' causation may be relevant at the trial stage but an ADEA plaintiff is not required to make* that *showing at the summary judgment sta[g]e.*" [Dkt. 102] His retaliation claim cannot withstand summary judgment due to his failure to show *but-for* causation; no law he cites holds otherwise.

### C. **Bessler concedes that Tempe's proffered reasons for his separation are non-retaliatory and he fails to prove that they were pretextual.**

The Response concedes that Tempe has "*articulated a non-retaliatory reason*" for separation. *Id.* at p. 16-17. Once the employer provides a legitimate, non-retaliatory reason for a discharge, the burden shifts to the employee to prove pretext. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Fleming*, 151 F. Supp. 3d at 1053 ("The evidentiary threshold is higher at this step than at the *prima facie* case," as employee must produce "specific, substantial evidence" of pretext); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). As explained in Section II(B)(3), Bessler offers no evidence of *but-for* causation. He therefore certainly could not satisfy his *more demanding* burden to prove pretext with specific and substantial evidence.

### III. <u>CONCLUSION</u>

Summary judgment in Tempe's favor is warranted, as Bessler has not shown the existence of any genuine issue of material fact, and Tempe is entitled to summary judgment as a matter of law. Tempe requests an award of its attorneys' fees and costs.

---

temporal proximity); *Bell v. Clackamas Cty.*, 341 F.3d 858 (9th Cir. 2003) (not applying but-for causation).

RESPECTFULLY SUBMITTED this 12th day of April 2021.

JACKSON LEWIS P.C.


By: */s/ J. Greg Coulter*
    J. Greg Coulter
    J. Alexander Dattilo
    Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Tod F. Schleier
Bradley H. Schleier
SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
tod@schleierlaw.com
brad@schleierlaw.com

*Attorneys for Plaintiff*

By: */s/ Miranda L. Dotson*

4812-4469-1167, v. 1