**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Bessler, | No. CV-19-04610-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tempe, et al., | |
| Defendant. | |

In this case, Plaintiff Donald Bessler, the former Public Works Director of the City of Tempe ("Tempe"), claims he was let go in retaliation for filing a charge of age discrimination. Tempe, in contrast, asserts it separated Bessler because of his job performance. Before the Court are Tempe's Motion for Summary Judgment (Doc. 100), the parties' cross-motions for summary judgment on Tempe's affirmative defense of mitigation of damages (Docs. 84; 100), and Bessler's *Daubert* Motion to exclude or limit the testimony of Tempe's expert witness (Doc. 85). The Court rules as follows.

## I. BACKGROUND

Bessler, 62 years old, was employed as the Director of Tempe's Public Works Department ("PWD") from August 2, 2010 to November 2, 2018. (Doc. 14 ("Compl.") ¶ 5.) As the Director of the PWD, Bessler oversaw four divisions: water utilities, field operations, transportation, and engineering. (Doc. 94 at 3.) Although there were some concerns regarding Bessler's leadership and management performance, Bessler never received any formal discipline during his employment with Tempe. (Docs. 100 at 3; 101 at

2.) At a certain point during his employment Bessler's relationship with Tempe's City Manager, Andrew Ching, began to deteriorate. (Doc. 101 at 3.) Bessler claims Ching regularly criticized and belittled him during staff meetings in front of other employees. (*Id.*) Bessler asked Ching why, in his opinion, he treated him disrespectfully at staff meetings. (*Id.*) According to Bessler, Ching said it was because he was the most "experienced" employee. (Doc. 100–4 at 39.) Bessler also claims he complained about Ching's conduct to the Deputy City Manager, Steven Methvin, who similarly explained Ching treated Bessler differently because of his experience. (Doc. 101 at 3.) Though Bessler admits Methvin did not use the word "age," Bessler claims he told Methvin that experience is acquired through age. (*Id.*)

On September 6, 2018, Methvin met with Bessler and expressed concerns over Bessler's job security. (Docs. 100 at 4; 101 at 4.) The parties dispute the specific interactions during this meeting. (Doc. 101 at 5.) Methvin claims Bessler said he wanted to leave his job and only needed a severance package to get to retirement. (Doc. 100 at 4.) Methvin also claims he told Bessler to consider terms for a severance package. (*Id.* at 5.) In contrast, Bessler claims he told Methvin he was worn down, but never stated he wanted to leave his job. (Doc. 101 at 5.) Bessler testified he told Methvin that if he were to leave, he would need to figure out a way to retire with 10 years of service for pension benefits with the Arizona State Retirement System ("ASRS"). (*Id.*)

On September 10, 2018, Bessler, without telling anyone at Tempe, contacted the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination. (Doc. 101–6 at 2.) Bessler told an EEOC investigator Ching said he treated Bessler differently because of his experience. (*Id.* at 4.) Bessler also told the EEOC investigator he thought experience was a proxy for his age. (*Id.*) The following day, Bessler sent the EEOC a letter explaining Ching had created a hostile work environment by belittling and harassing him. (Doc. 100–3 at 15.) Bessler, again, alleged that Ching treated him this way because he was the most experienced. (*Id.*)

Also on September 10, 2018, Ching, Methvin, and the other Deputy City Manager

met amongst themselves to discuss Bessler's employment. (Doc. 100 at 5.) During this meeting, they agreed they should separate Bessler because of his expressed desire to leave and their previous concerns over his leadership and management performance. (*Id.*) Ching instructed Methvin to reconnect with Bessler to explore Bessler's mutually acceptable exit. (Doc. 100–2 at 59.) Methvin claims he attempted to meet with Bessler to discuss separation on multiple occasions between September 10 and September 24, 2018. (Doc. 100 at 5.) Bessler claims, however, he interacted with Methvin multiple times during this period and Methvin never discussed separation with him. (Doc. 101 at 7.)

Bessler and his wife met with Methvin and Tempe's City Attorney, Judith Baumann, on September 24, 2018. (Docs. 100 at 6; 101 at 7.) During this meeting Bessler proposed an exit plan, whereby he would announce his retirement in January 2019 with a separation date of April 2019. (Doc. 101 at 8.) In turn, Bessler requested one year's severance payment, health insurance, and credit for 14 months of service, which would allow him to reach 10 years of service for pension purposes. (*Id.*) During this conversation, Bessler, for the first time, informed Methvin and Baumann he had filed an EEOC charge against Tempe. (Docs. 100 at 6; 101 at 8.) According to Ms. Bessler, the atmosphere in the room completely changed and it got very quiet at that point in the conversation. (Doc. 101 at 8.) Neither Methvin nor Baumann mentioned a decision to separate Bessler during this meeting. (*Id.*) Instead, Methvin and Baumann told Bessler they would inform Ching of his demands. (Doc. 100 at 7.)

Although Bessler told Methvin and Baumann he had filed the EEOC charge on September 24, 2018, he actually filed it a day later, on September 25, 2018. (Doc. 100–4 at 37.) Bessler alleged age, sex, and race discrimination and retaliation. (*Id.*) The charge highlighted Ching's alleged explanation that he treated Bessler differently because of his experience. (*Id.* at 39.) Bessler also alleged that Ching's reliance on experience was a proxy for age discrimination. (*Id.*)

On September 26, 2018, Methvin and Baumann met with Bessler and extended a counteroffer regarding his severance package. (Docs. 100 at 8; 101 at 8.) Baumann then

told Bessler his employment with Tempe would end in 2018. (*Id.*) Methvin and Baumann also explained they interpreted Bessler's statements during the September 6, 2018 meeting as a resignation. (*Id.*) Bessler disagreed and stated the September 6, 2018 meeting ended with him agreeing to work until he reached his 10-year anniversary with Tempe. (Doc. 101 at 9; 101–6 at 6.) Bessler, Methvin, and Baumann continued their negotiations of a severance package on October 11, 2018. (Doc. 100 at 8.)

On October 17, 2018, Methvin and Baumann informed Bessler his last day of physical employment with Tempe would be November 2, with an effective separation date of November 9. (*Id.*) Two days later, Bessler filed a second charge with the EEOC alleging Tempe retaliated against him for filing his initial charge of discrimination. (Doc. 100–5 at 4.)

Following his separation, Bessler submitted eleven job applications and participated in five interviews. (Doc. 84 at 2.) On November 27, 2018, Bessler accepted an offer of temporary employment with the City of Glendale, Arizona. (*Id.*) Bessler's temporary employment contract with the City of Glendale has been renewed twice. (*Id.* at 3.) During this time, Bessler was appointed as the Chief Capital Improvement Officer and has served as the Acting Director of Engineering, supervising the City of Glendale's Engineering Department. (*Id.*)

On July 2, 2019, Bessler initiated this lawsuit against Tempe alleging age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). (Doc. 1.) Bessler later amended his Complaint, withdrawing the age discrimination claim. (Compl.)  In its Answer, Tempe asserted an affirmative defense of failure to mitigate damages. (Doc. 16 at 6.)

## II.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255; *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) ("The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial.").

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence of . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1). This Court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).

Where, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotations omitted). The summary judgment standard operates differently depending on whether the moving party has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. The party with the burden of proof "must establish beyond controversy every essential element" of its claim or defense based on the undisputed facts. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotations omitted). The party without the burden of proof, on the other hand, is entitled to summary judgment if it shows the other party cannot establish at least one element of its claim or defense based on the undisputed facts. *Celotex Corp.*, 447 U.S. at 322–23.

### B. *Daubert* Standard

A party seeking to offer expert testimony must establish that the testimony satisfies Federal Rule of Evidence 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As a gatekeeper, trial judges make a preliminary assessment as to whether expert testimony is admissible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). Specifically, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The Rule 702 inquiry is "flexible" and the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594–95.

## III.   DISCUSSION

### A.   Tempe's Summary Judgment Motion

Tempe has moved for summary judgment on Bessler's retaliation claim. (Doc. 100.) The burden-shifting analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to ADEA retaliation claims at the summary judgment stage. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994). A plaintiff has the initial burden of establishing a prima facie case of retaliation. *Id.* If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason

1    for the adverse employment decision. *Id.* If the employer articulates such a reason, the

2    plaintiff has the burden of showing the employer's alleged reason is pretextual. *Id.*

### 1.    Prima Facie Case

4         To establish a prima facie case of retaliation, a plaintiff must show: (1) the plaintiff

5    engaged in a protected activity; (2) the plaintiff suffered an adverse employment action;

6    and (3) a causal link exists between the protected activity and the adverse employment

7    action. *Poland v. Chertoff*, 494 F.3d 1174, 1179–80 (9th Cir. 2007). The proof required to

8    establish a prima facie case of retaliation on summary judgment is "minimal and does not

9    even need to rise to the level of preponderance of the evidence." *Wallis*, 26 F.3d at 889.

10   The plaintiff only needs to offer enough evidence to give rise to a presumption of unlawful

11   discrimination. *Id.*

### a.    Protected Activity

13        Tempe argues Bessler never engaged in protected activity because he lacked an

14   objectively reasonable belief that the allegedly wrongful conduct violated the ADEA. (Doc.

15   100 at 11.) An employee engages in protected activity if he "has made a charge, testified,

16   assisted, or participated in any manner in an investigation, proceeding, or litigation under

17   [the ADEA]." 29 U.S.C. § 623(d). This clause is generally known as the ADEA's

18   "participation clause." *Sias v. City Demonstration Agency*, 588 F.2d 692, 694 (9th Cir.

19   1978). Although filing a charge can be considered participation, "the underlying

20   discrimination must be reasonably perceived as discrimination prohibited by" the ADEA.

21   *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).[1] This is an objective

22   standard. *See Maner v. Dignity Health*, 350 F. Supp. 3d 899, 909 (D. Ariz. 2018). If no

23   reasonable person could have believed the conduct complained of constituted unlawful

24   discrimination, then the charge is not protected activity. *See Holloway v. Eastbridge*

25   *Workforce Sols.*, No. CV-18-00795-PHX-SMB, 2019 WL 1059969, at *4 (D. Ariz. Mar.

---

[1] Although *Learned* and other cases cited herein involve retaliation claims under Title VII
of the Civil Rights Act of 1964 ("Title VII"), the Ninth Circuit has long applied the same
framework to ADEA retaliation claims. *Poland*, 494 F.3d at 1180 n.1; *O'Day v. McDonnell
Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996); *Merrick v. Farmers Ins. Grp.*,
892 F.2d 1434, 1441 (9th Cir. 1990).

6, 2019) (citing *McAllister v. Adecco USA Inc.*, No. CV 16-00447 DKW-KJM, 2018 WL 6112956, at *8 (D. Haw. Nov. 21, 2018), *aff'd sub nom. McAllister v. Brunk*, 812 F. App'x 708 (9th Cir. 2020)). It is well settled, however, that the participation clause protects an employee from retaliation regardless of the merits of the charge of discrimination. *Sias*, 588 F.2d at 695; *see also Learned*, 860 F.2d at 932 ("[I]t is not necessary to prove the underlying discrimination in fact violated Title VII in order to prevail in an action charging unlawful retaliation.").

It is undisputed Bessler interviewed with the EEOC on September 10, 2018 to inquire about filing a charge of discrimination. (Compl. ¶ 43.) During the interview, Bessler stated Ching singled him out and treated him differently because he was the most "experienced" employee, which Bessler believed was because of his age. (Doc. 101–6 at 4.) In a letter to the EEOC, Bessler said Ching told him that he used Bessler to send a message to other directors because he had more experience and could take it. (Doc. 100–3 at 15.) Bessler claimed Ching's pattern of using belittling and harassing tactics was unbearable and perpetuated a hostile work environment.[2] (*Id.*) Bessler filed a charge of discrimination with the EEOC on September 25, 2018, alleging age discrimination. (Doc. 100–4 at 37.) In his charge, Bessler alleged age was a factor in Ching's discriminatory conduct given Ching's rationalization of treating Bessler differently because he was the most experienced employee. (*Id.* at 39.) Bessler further claimed, "[e]xperience only comes with age" and he was the oldest male employee that reported through Ching. (*Id.*)

Tempe argues age and experience are distinct concepts and experience is not protected under the ADEA. (Doc. 100 at 13.) But, for purposes of summary judgment,

---

[2] The Ninth Circuit has recognized hostile work environment claims under the ADEA. *You v. Longs Drugs Stores California, LLC*, 937 F. Supp. 2d 1237, 1259 (D. Haw. 2013), *aff'd sub nom. You v. Longs Drug Stores California LLC*, 594 F. App'x 438 (9th Cir. 2015). To establish the existence of a hostile work environment based on age, an employee must demonstrate: (1) he was subjected to verbal or physical conduct based on age, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment. *Id.* Tempe only argues Bessler lacked an objectively reasonable belief the conduct complained of violated the ADEA because such alleged conduct was based on "experience" rather than age. Thus, the Court does not analyze whether Bessler had an objectively reasonable belief as to any of the other elements of a hostile work environment claim under the ADEA.

1   Bessler is not required to prove Ching's conduct in fact violated the ADEA. *See Learned*,

2   860 F.2d at 932. The applicable standard is whether Ching's conduct can be reasonably

3   perceived as wrongful discrimination under the ADEA. *See id.*

4        The cases Tempe cites in support of its position are distinguishable. In *Learned*, an

5   employee filed a complaint with a state agency alleging discrimination based on physical

6   and mental disabilities in violation of Title VII. 860 F.2d at 930. The employee later filed

7   a complaint alleging the employer retaliated against him for filing the initial complaint. *Id.*

8   The Ninth Circuit affirmed the grant of summary judgment in the employer's favor. *Id.* at

9   932. As the court explained, even if the initial complaint could be considered participation,

10  it was not protected activity because the plaintiff did not allege discrimination prohibited

11  by Title VII (i.e., race, color, religion, sex, or national origin). *Id.* Unlike *Learned*, Bessler's

12  charge alleged discrimination based on age, which is protected under the ADEA. (Doc.

13  100–4 at 39.) Bessler also indicated that he was 60 years old at the time of the alleged

14  conduct (*id.*), meaning that his age falls within the range protected by the ADEA. *See* 29

15  U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are

16  at least 40 years of age.").

17       *Maner* is also distinguishable. There, an employee wrote a series of letters to his

18  employer complaining of workplace favoritism of his supervisor's romantic partner. 350

19  F. Supp. 3d at 907. After he was terminated, the employee brought a retaliation claim under

20  Title VII. *Id.* at 906. The court granted the employer's motion for summary judgment. *Id.*

21  at 909. As the court explained, the employee did not have an objectively reasonable belief

22  the supervisor's conduct violated Title VII because "[f]ederal courts widely hold that

23  workplace favoritism of a romantic partner is not sex-based discrimination under Title

24  VII." *Id.* Unlike *Maner*, Tempe has not provided any case holding disparate treatment

25  based on experience cannot constitute age discrimination under the ADEA.[3]

26  ───────────────
    [3] Tempe cites *Rhinehart v. I.B.M.*, 124 F.3d 212 (9th Cir. 1997), for the proposition that
27  disparate treatment based on experience is not age discrimination. (Doc. 100 at 13.)
    *Rhinehart* is an unpublished disposition, which is not precedential and cannot be cited to
    this court in accordance with Ninth Circuit Rules. *See* U.S. Ct. of App. 9th Cir. R. 36-3(c)
28  ("Unpublished dispositions and orders of this Court issued before January 1, 2007 may not
    be cited to the courts of this circuit…."). Even if *Rhinehart* could be cited to this Court, it

Tempe also argues Bessler lacked a subjective belief Ching's conduct violated the ADEA. (Doc. 103 at 6.) Methvin claims that when Bessler informed him and Baumann of the EEOC charge he said the only reason he filed the charge was "to ensure [Ching] doesn't lose his mind and fire me." (Doc. 100–5 at 21.) Neither of the cases Tempe cites expressly require a showing of a subjective belief. *See Learned*, 860 F.2d at 932; *Maner*, 350 F. Supp. 3d at 909. Rather, whether the underlying conduct can be reasonably perceived as discrimination is an objective standard. *Maner*, 350 F. Supp. 3d at 909. Regardless, Bessler testified he told Methvin that Ching treated him differently because of his age. (Doc. 101– 2 at 16.) Bessler conveyed this same information to the EEOC during the initial interview and the follow-up letter. (Docs. 100–3 at 15; 101–6 at 4.) Based on this evidence, a reasonable jury could find Bessler had a subjective belief that Ching's conduct violated the ADEA.

Tempe also argues Bessler was not the oldest director and there is no reasonable explanation why Ching would allegedly target Bessler and not the older director. (Doc. 100 at 13.) The older director testified she regularly attended meetings with Ching and other directors and did not feel she was treated less favorably than any other person. (Doc. 100– 5 at 33.) Nevertheless, this testimony does not necessarily mean Bessler's belief was unreasonable. After all, Bessler's charge alleged both age and sex discrimination and he indicated he was the oldest male employee who reported to Ching. (Doc. 100–4 at 39.) Bessler, therefore, has offered sufficient evidence to meet his summary judgment burden of showing he engaged in protected activity.

### b.     Adverse Employment Action

The Ninth Circuit defines adverse employment action broadly and includes any

---

does not stand for the proposition that Tempe asserts. In *Rhinehart*, an employee brought an age discrimination claim, asserting the employer's practice of applying higher evaluation criteria to more experienced employees led to his declining performance evaluations. 124 F.3d at *1. The court affirmed summary judgment in the employer's favor and explained the higher performance evaluation criteria was a subjective employment practice with a sound basis. *Id.* The court did not, however, categorically hold disparate treatment based on experience can never constitute discrimination under the ADEA. *See id.* And unlike *Rhinehart*, there is no sound basis for allegedly harassing and belittling an employee because of his age. There is also no evidence Tempe applied experience-based standards to any employee other than Bessler.

action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Termination is an adverse employment action. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002). On October 17, 2018, Tempe notified Bessler his last day of physical employment would be November 2, with an effective separation date of November 9. (Docs. 100 at 8; 101 at 9.)

Tempe argues Bessler did not suffer an adverse employment action. (Doc. 103 at 8.) It contends that Bessler voluntarily resigned at the September 6, 2018 meeting with Methvin. (Doc. 100 at 16.) The parties dispute the contents of this meeting. (Docs. 100–2 at 8; 101–4 at 13.) Methvin testified Bessler said he wanted to leave his job and that he needed a severance package to take care of his family. (Doc. 100–2 at 78.) Methvin also claims he told Bessler to consider what terms he wanted in a severance package. (Doc. 100–5 at 20.) Bessler denies saying he wanted to leave, resign, or that he wanted a severance package. (Doc. 100–2 at 8–9, 24–25.) In fact, Bessler contends he expressed an intent to stay with Tempe until he became eligible for retirement benefits. (*Id.* at 9.)

Viewing these facts in the light most favorable to Bessler, the Court cannot find that he resigned on September 6, 2018. Even an expression of a *desire* to leave is not necessarily a resignation. *Cf. Resign*, Black's Law Dictionary (11th ed. 2019) ("To formally announce one's *decision* to leave a job or an organization.") (emphasis added).[4] Methvin's suggestion that Bessler consider a severance package further suggests any desire to leave was conditional, not a final decision to leave. Finally, in his deposition, Ching stated he instructed Methvin to reconnect with Bessler to "explore exactly what he meant by. . . him being done." (Doc. 100–2 at 59.) This fact cuts against Tempe's argument that Bessler manifested an intent to resign.

The case Tempe cites is inapposite. In *Yardley v. ADP TotalSource, Inc.*, an employee sent a resignation letter to her supervisor, which unambiguously stated, "I have decided to resign from my position" and provided an official resignation date. No. CV-13-04639-MWF JCGX, 2014 WL 1494105, at *3–4 (C.D. Cal. Mar. 12, 2014). The employer

---

[4] *See also Resignation*, Black's Law Dictionary (11th ed. 2019) ("[A]n official announcement that one has *decided* to leave one's job or organization.") (emphasis added).

asked the employee to stop working before the date indicated in the resignation letter. *Id.* at *4. The court granted the employer's motion for summary judgment and explained that merely advancing a voluntary resignation did not amount to an adverse employment action. *Id.* Unlike the employee in *Yardley*, there is no evidence Bessler provided Tempe a resignation letter or otherwise formally announced his decision to resign. Thus, Bessler has offered sufficient evidence to meet his summary judgment burden of showing he suffered an adverse employment action.

### c.   Causal Link

An employee must prove the protected activity was the "but-for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). In other words, the adverse employment action would not have occurred in the absence of the employee's protected activity. *See id.* Bessler argues the "but-for" causation standard is inapplicable at the summary judgment stage. (Doc. 102.) The cases Bessler cites in support of his argument involve age discrimination claims, not retaliation. *See Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 851 (D. Ariz. 2019) (explaining plaintiff claiming age discrimination under the ADEA is not required to show age was the "but-for" cause of the adverse employment action on summary judgment). This is an important distinction because, unlike retaliation cases, a causal link is not required to establish a prima facie case of age discrimination. *See Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (setting forth elements of prima facie case of age discrimination); *see also T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (explaining the standard for the causal link is "but-for" causation). The Court will, therefore, apply the "but-for" cause standard to determine if there was a causal link.

### i.   Earlier Separation Decision

Tempe first argues that the decision to separate Bessler was made before he engaged in protected activity and before he notified them of his charge. (Doc. 100 at 14–15.) "[P]rotected activities that occur subsequent to alleged retaliatory acts cannot support a causal link between the protected activity and the adverse employment action." *Quinones*

*v. Potter*, 661 F. Supp. 2d 1105, 1128 (D. Ariz. 2009) (citing *Timmons v. United Parcel Serv., Inc.*, 310 F. App'x 973, 975 (9th Cir. 2009)). This is because an employer's awareness of the protected activity is essential to showing a causal link. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982)). The Court must, therefore, examine the factual contentions concerning when Bessler engaged in protected activity, when Tempe became aware of the protected activity, and when Tempe made the final decision to separate Bessler.

Bessler engaged in protected activity as early as September 10, 2018, when he interviewed with the EEOC. *See Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (holding plaintiff's contact with the EEOC about filing a complaint was protected activity). On September 24, 2018, Bessler informed Methvin and Baumann that he filed a charge of discrimination. (Docs. 100 at 6; 101 at 8.) Although Bessler actually filed his charge a day later (Doc. 100–4 at 37), it is undisputed Tempe was aware Bessler had filed, or was about to file, an EEOC charge by September 24, 2018. *See Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1156 n.3 (9th Cir. 1982) (explaining there is no legal distinction between filling a charge, which is clearly protected, and threatening to file a charge). Thus, the critical question is whether the adverse employment action occurred before or after September 24, 2018.

In his declaration, Ching stated he made the decision to separate Bessler on September 6, 2018. (Doc. 100–5 at 25.) On September 10, 2018, Ching, Methvin, and Jones met and decided to separate Bessler. (*Id.* at 20, 26, 29.) At his deposition, however, Ching testified he instructed Methvin to reconnect with Bessler to "explore exactly what he meant . . . by him being done and what he was looking for in terms of his exit strategy." (Doc. 100–2 at 59.) Methvin likewise stated Ching asked him to meet with Bessler to learn what he wanted in a severance package. (Doc. 100–5 at 20, 29.) Indeed, Tempe contends Methvin tried to meet with Bessler on multiple occasions between September 10 and September 24, 2018 to discuss separation. (Doc. 100 at 5.) Tempe did not inform Bessler his employment would be ending until September 26, 2018. (*Id.* at 8; Doc. 101 at 8.) And

1   even then, it is not clear Tempe had finalized the terms of Bessler's separation.

2   These facts are analogous to *Conroy v. Hewlett-Packard Co.*, No. 3:14-CV-01580-

3   AC, 2016 WL 1276552 (D. Or. Mar. 31, 2016). There, an employer asserted that it

4   eliminated an employee's position as part of a restructuring plan. *Id.* at *9. Before the

5   decision was finalized, however, the employer learned that the employee filed a charge of

6   discrimination with the EEOC. *Id.* A month later, the employer informed the employee her

7   job had been eliminated due to the reorganization. *Id.* at *10. The court held the employee

8   made the requisite showing of a causal link for purposes of her state law retaliation claim,

9   which the court analyzed under Title VII retaliation case law. *Id.* at *15–16. As the court

10   explained, the decision to eliminate the employee's position was not *finalized* until after

11   the employer was aware of the charge. *Id.* In other words, at the time of the decision directly

12   resulting in the adverse action, the employer was aware the employee engaged in protected

13   activity. *Id.*

14   Similar to *Conroy*, Tempe may have made the preliminary decision to separate

15   Bessler on September 10, 2018, before it was aware of Bessler's charge. Tempe, however,

16   points to no evidence it had decided on a separation date. Tempe was also attempting to

17   negotiate the terms of separation as late as October 11, 2018. (Doc. 100 at 8.) Tempe did

18   not communicate a final separation decision to Bessler until over a month later, on October

19   17, 2018. (*Id.*) This evidence creates a disputed issue of fact as to whether Tempe's decision

20   to separate Bessler was finalized before or after September 24, 2018. Like *Conroy*, the jury

21   could find that "at the time of the decision that directly resulted in the adverse action[,]"

22   Tempe was already aware Bessler had engaged in protected activity. *Conroy*, 2016 WL

23   1276552 at *16. A reasonable jury could also find that Bessler's protected activity caused

24   Tempe to offer him less favorable separation terms.

25   **ii.      Circumstantial Evidence**

26   The parties dispute whether temporal proximity between the protected activity and

27   the adverse employment action is, alone, sufficient to establish causation. Courts are not

28   entirely consistent on this issue. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d

843, 869 (9th Cir. 2014) (holding plaintiff established a prima facie case of retaliation based on timing between protected activity and adverse employment actions).[5] *But see Lucas v. Tempe Union High Sch. Dist.*, No. CV-17-02302-PHX-JAT, 2019 WL 3083010, at *11 (D. Ariz. July 15, 2019) (holding plaintiff failed to establish a causal link where her contentions were based solely on temporal proximity). The Court need not decide whether temporal proximity alone is sufficient, however, because Bessler has offered additional evidence that would allow a reasonable jury to find "but-for" causation.

On September 24, 2018, Bessler informed Tempe that he filed a charge with the EEOC alleging age discrimination. (Docs. 100 at 6; 101 at 8.) Two days later, Tempe informed Bessler his employment would end in 2018. (Docs. 100 at 8; 101 at 8.) Less than a month later, Tempe informed Bessler his last day of physical employment would be November 2, 2018. (Docs. 100 at 8; 101 at 9.) Even if this temporal proximity is not sufficient, by itself, it is certainly relevant circumstantial evidence of causation. *See Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 694 (9th Cir. 2017) (explaining temporal proximity between protected activity and termination is relevant in retaliation claims). Ms. Bessler testified that after her husband told Methvin and Baumann about the charge, "[t]he room completely changed" and "[i]t got very, very quiet at that point in the conversation." (Doc. 101–5 at 33.) Evidence of an employer's contemporaneous reaction to protected activity can be circumstantial evidence of retaliation. *See Bell v. Clackamas Cnty.*, 341 F.3d 858, 866 (9th Cir. 2003) (holding employer's contemporaneous displeasure with employee's complaints regarding racial comments and profiling was circumstantial evidence of retaliation). Bessler also presented undisputed evidence that he was never issued a performance review or written warning. (Doc. 101–4 at 6–7.) Moreover, less than two months before Tempe informed Bessler his employment would end, Ching told Bessler that he had several more years of utility left to serve Tempe. (Doc. 101–4 at 19–20.) Based on this circumstantial evidence, a reasonable jury could find that Bessler's EEOC charge

---

[5] Although *Ollier* involved a retaliation claim under Title IX of the Education Amendments of 1972, the court applied the same framework used to decide retaliation claims under Title VII. *Id.* at 867.

1    was the "but-for" cause of his separation.

2          Tempe argues that Bessler inconsistently states when the retaliation started. (Doc.

3    100 at 15.) In his initial EEOC charge, Bessler alleged he was retaliated against because he

4    objected to what he felt were discriminatory employment practices. (Doc. 100–4 at 39.) In

5    his Complaint, Bessler alleged Tempe did not take any adverse employment action against

6    him until it learned of his EEOC charge. (Compl. ¶ 61.) Bessler's allegations pertain to two

7    separate types of retaliatory employment actions: first, Ching's alleged creation of a hostile

8    work environment and, second, Bessler's separation. These allegations are not necessarily

9    inconsistent. Bessler, therefore, has offered sufficient evidence to meet his summary

10    judgment burden of showing a causal link between his protected activity and the adverse

11    employment action.

### d.    Conclusion

13          Bessler has produced enough evidence from which a reasonable jury could find he

14    engaged in protected activity, suffered an adverse employment action, and that a casual

15    link exits between the protected activity and adverse employment action. Accordingly,

16    Bessler has satisfied his initial burden of establishing a prima facie case of retaliation.

### 2.    Legitimate, Nonretaliatory Reason for Separation

18          Having satisfied the prima facie case for retaliation, the burden shifts to Tempe to

19    offer a legitimate, nonretaliatory reason for the adverse employment action. *See Yartzoff*,

20    809 F.2d at 1376. "The employer need not persuade the court that it was actually motivated

21    by the proffered reasons: 'it is sufficient if the defendant's evidence raises a genuine issue

22    of fact as to whether it discriminated against the plaintiff.'" *Id.* (citing *Texas Dep't of Cmty.*

23    *Affs. v. Burdine*, 450 U.S. 248, 248 (1981)). Bessler concedes Tempe has articulated

24    nonretaliatory reasons for his separation. (Doc. 101 at 16.) Nonetheless, because Tempe's

25    reasons are relevant to the pretext inquiry, the Court describes them in detail.

26          Tempe explained its decision to separate Bessler was based on (1) his expressed

27    desire to leave his job and (2) the issues with his leadership and management skills. (Doc.

28    100 at 17.)  As for the first reason, Tempe argues that it is immaterial whether Bessler

actually said he wanted to leave his job because that is what Ching believed at the time he made the separation decision based on the information he received from Methvin. (Doc. 103 at 6.) As for the second reason, Tempe contends Ching expressed concerns about Bessler's leadership and management long before Bessler engaged in protected activity. (Doc. 100 at 3.) One specific concern was Bessler's alleged "groveling rule," whereby disciplined employees wishing to use vacation time in lieu of unpaid leave were required to admit their actions violated Tempe's policies. (Docs. 100 at 3; 103 at 3.) Ching also testified he was concerned that Bessler created a "significant degree of bureaucracy within Public Works that involved the delegation of what would traditionally be [human resources] duties and responsibilities to individuals who worked as executive or management assistant level employees." (Doc. 100 at 3–4.) According to Ching, this created a duplication of effort and was an apparent attempt to circumvent human resources practices. (*Id.*) Ching further testified he had concerns over Bessler's decision to hire someone with no experience in public works as the solid waste division manager. (*Id.* at 4.) Ching claimed this individual was only hired because she was a close friend of the Bessler family. (*Id.*)

Ching also felt Bessler administered discipline inconsistently. (*Id.*) Ching specifically stated Bessler advocated for an overly harsh termination of one employee but failed to impose meaningful discipline on others for worse conduct. (*Id.*) Ching further stated he learned Bessler interviewed for an assistant city manager position with the City of Chandler in the summer of 2018. (*Id.*) Thus, Tempe produced enough evidence to meet its burden of articulating nonretaliatory reasons for separating Bessler.

### 3. Pretext

If the employer articulates a nonretaliatory reason for the adverse action, the plaintiff has the burden of showing the employer's proffered reasons are a mere pretext for retaliation. *Wallis*, 26 F.3d at 890. In other words, the plaintiff must create a genuine issue of material fact as to pretext to avoid summary judgment. *Id.* The employee can do so by showing: (1) the employer's proffered reasons are unworthy or credence; or (2) retaliation

was more likely the employer's motivation. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). Although relevant, the minimal circumstantial evidence necessary to make out a prima facie case will not suffice to show pretext. *Wallis*, 26 F.3d at 892. A mere refutation of the employer's proffered reasons is likewise insufficient. *Little*, 301 F.3d at 969. Instead, the plaintiff must produce specific and substantial evidence of pretext.  *Wallis*, 26 F.3d at 890.

Bessler has produced sufficient specific and substantial evidence to create a genuine dispute as to pretext. First, Bessler denies saying he wanted to leave his job or resign. (Doc. 100–2 at 8–9, 24–25.) Ching also testified he instructed Methvin to reconnect with Bessler to "explore exactly what he meant by . . . him being done." (Doc. 100–2 at 59.) Additionally, Tempe did not tell Bessler that it had interpreted his statements during the September 6 meeting as a resignation until September 26, 2018, two days after it learned of Bessler's charge. (Docs. 100 at 8; 101 at 8.) Accordingly, there is a factual dispute regarding whether Ching believed Bessler had expressed a desire to leave his job.

Bessler further asserts some of the events Tempe complains of occurred more than a year before he was separated. (Doc. 101 at 16.) Evidence that the employer took no adverse action at the time of the conduct it claims is the reason for termination is circumstantial evidence of pretext. *See Ollier*, 768 F.3d at 870 (evidence employee was not reprimanded at the time of the events underlying the employer's nonretaliatory reasons, which occurred years before the termination, was circumstantial evidence of pretext). Ching testified that the so-called "groveling rule" incident occurred sometime in 2016 or 2017 and acknowledged that he did not have a personal discussion with Bessler about it. (Doc. 100–2 at 62.) Similarly, the individual hired as the solid waste division manager testified that she started her job in May 2017. (Doc. 101–3 at 20.) Ching admitted that he never expressed his concerns over this hiring decision directly to Bessler. (Doc. 101–4 at 40.) And, although neither party indicated exactly when the so-called bureaucracy issue arose, an administration-employee relations manager testified that the general practices complained of here were established in 2003, before Bessler started working for Tempe.

(Doc. 101–3 at 10–11.)

Bessler also presented circumstantial evidence of pretext regarding Tempe's contention that he administered discipline inconsistently. The fact someone else was ultimately responsible for the improper decision attributed to the employee is circumstantial evidence of pretext. *See Ollier*, 768 F.3d at 870 (finding evidence of pretext where the inappropriate determination attributed to employee was the responsibility of other employees). Ching admitted he, as the City Manager, ultimately decided how to discipline high-level employees, including those discussed here. (Docs. 100 at 3; 101–4 at 27, 30.) Ching also concurred with the discipline imposed on the employee that was allegedly treated harsher. (Doc. 101–4 at 26.)

Although Bessler told Ching he interviewed for an assistant manager position with the City of Chandler, he also told Ching he was no longer pursuing the position. (Doc. 100–2 at 53.) In response, Ching told Bessler that he had several more years of utility left to serve Tempe. (*Id.*) Ching made this comment on August 2, 2018, less than two months before Tempe informed Bessler his employment would end. (Doc. 101–4 at 19–20.)

Finally, Bessler asserts Tempe never issued him a performance review or written warning during his employment. (Doc. 101 at 2.) The lack of documentation detailing discussions or discipline related to the employee's alleged performance issues is circumstantial evidence of pretext. *See, e.g.*, *Ramirez*, 374 F. Supp. 3d at 852 (finding employer's failure to document meetings with employee or add anything to employee's personnel file regarding his productivity issues, which was one of the asserted reasons for his termination, was evidence of pretext). Methvin admitted he never issued any kind of performance review or written warning to Bessler. (Doc. 100–2 at 74.)

Tempe argues that director-level employees, such as Bessler, are not covered by any progressive discipline policy. (Doc. 100 at 8 n.2.) In her declaration, Tempe's former Internal Services Director stated directors are not protected by any progressive discipline policy and can be terminated without any record of prior discipline. (Doc. 100–5 at 32.) At her deposition, however, this witness could not identify the specific policy excluding

directors from progressive disciplinary procedures. (Doc. 101–5 at 12.) In contrast, Bessler contends Tempe's policies require it to provide notice to all employees when their job performances are deficient. (Doc. 101 at 3.) Bessler points to the Performance Management Policy, which states Tempe provides "all employees" with a comprehensive performance management and planning program. (Doc. 101–5 at 3.) Thus, Bessler has produced sufficient evidence to create a genuine issue of material fact as to pretext.

### 4.  Conclusion

The Court finds Bessler established a prima facie case of retaliation and produced sufficient evidence to create a genuine issue of material fact as to pretext. Although Bessler will still bear the ultimate burden of persuasion on his retaliation claim at trial, at this stage, the evidence is sufficient to preclude summary judgment in favor of Tempe.

### B.  Cross-Motions on Tempe's Affirmative Defense

The parties filed cross-motions for summary judgment on Tempe's affirmative defense of mitigation of damages. (Docs. 84; 100.) Because the admissibility of Tempe's expert's testimony impacts the Court's evaluation of the parties' cross-motions for summary judgment, the Court will consider Bessler's *Daubert* motion first.

### 1.  *Daubert* Motion

Bessler has moved to disqualify or limit the testimony of Tempe's vocational expert, Bradford Taft. (Doc. 85.) Tempe retained Taft to conduct a vocational evaluation of Bessler's employability and earning capacity. (Doc. 86 at 3.) Tempe intends to use Taft's testimony to show Bessler failed to mitigate damages incurred after November 30, 2018 by failing to pursue job opportunities after this date. (Doc. 100 at 17.) Bessler argues Taft should be disqualified because his testimony is unreliable and irrelevant. (Doc. 85 at 1.) Alternatively, Bessler argues the Court should preclude Taft from testifying about substantially equivalent positions Bessler should have applied for and any potential positions outside the State of Arizona. (*Id.* at 1–2.) Finally, Bessler argues Taft's declaration is untimely and should be excluded. (Doc. 98 at 1.) The Court first addresses the timeliness of Taft's declaration.

### a.    Timeliness of Taft's Declaration

Parties must disclose expert reports at the time and in the sequence the court orders. Fed. R. Civ. P. 26(a)(2)(D). Tempe timely disclosed Taft's vocational evaluation on July 24, 2020, the deadline for expert disclosures. (Docs. 38; 94–5 at 9.) Tempe did not, however, produce Taft's declaration until February 11, 2021, nearly six months after the expert disclosure deadline. (Doc. 94–4 at 2.) Thus, unless Taft's declaration qualifies as a supplemental report under Federal Rule of Civil Procedure 26(e), it is an untimely initial expert report. *See Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, No. 17CV666 AJB (BGS), 2019 WL 3554938, at *2 (S.D. Cal. Aug. 5, 2019).

Under Rule 26(e), a party has a duty to supplement or correct its expert disclosure in a timely manner if it learns the disclosure is incomplete or incorrect and if the additional information has not otherwise been made known to the other parties during the discovery process or in writing. Fed. R. Civ. P. 26(e)(1)(A). "Rule 26(e) creates a 'duty to supplement,' not a right." *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).

> Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed. Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."

*Id.* (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)) (alteration in original). To determine whether a supplemental expert report is appropriate courts consider whether the supplemental information: (1) corresponds to a prior disclosure, and (2) was available at the time set for the initial disclosure. *Carrillo v. B & J Andrews Enterprises*, LLC, No. 2:11-CV-01450-RCJ-CWH, 2013 WL 420401, at *4 (D. Nev. Jan. 31, 2013).

Taft's declaration purports to supplement the prior vocational evaluation. A

supplement corresponds to a prior expert disclosure if it references the same materials as the initial report. *See Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013) (concluding that a supplement corresponded to a prior expert disclosure where it included studies referenced in the initial disclosure). The vocational evaluation referenced and included 4,341 job postings available from November 1, 2018 to April 10, 2020, in four states: Arizona, California, Colorado, and New Mexico. (Doc. 94–5 at 18.) The declaration also references these 4,341 job postings.

Courts have rejected supplemental expert disclosures where they "attempted to deepen and strengthen the expert's prior reports" with previously available information. *Sherwin-Williams Co. v. JB Collision Servs., Inc.*, No. 13-CV-1946-LAB WVG, 2015 WL 1119406, at *7 (S.D. Cal. Mar. 11, 2015) (citing *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 639 (D. Haw. 2008)); *see also Martinez v. Costco Wholsesale Corp.*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (finding supplemental report violated Rule 26(e) "by enriching the initial expert report with detail that was admittedly available to [p]laintiff's expert at the time she drafted the initial expert report"). All the information contained in the declaration was available at the time of the vocational evaluation. Most of the statements in the declaration are a mere recitation of the information or opinions provided in the vocational evaluation. (Doc. 94–4 at 2.) The declaration also identifies and includes ten specific job postings that Taft concluded matched Bessler's qualifications. (*Id.* at 2–3.) Yet these job postings were available at the time of the vocational evaluation and Taft merely failed to segregate or highlight them in any way. (Doc. 94–5 at 18.) Indeed, Taft admitted he failed to identify any specific jobs, out of the 4,341 job postings, he thought Bessler should have applied for. (Doc. 84–5 at 14, 18.) Instead, the vocational evaluation stated "Bessler may not have been qualified for all the positions listed" but "he was qualified to be hired for a significant number of the open positions." (Doc. 94–5 at 18.) Tempe cannot use Taft's later declaration to cure the lack of specificity in the vocational evaluation. *See Sherwin-Williams Co.*, 2015 WL 1119406, at *7 (explaining supplemental

expert reports are not intended to cure omissions caused by inadequate or incomplete preparation).[6] The Court finds Taft's declaration is not a proper supplemental report and is, therefore, untimely.

### b.    Exclusion of Untimely Declaration

An untimely expert disclosure is inadmissible unless the delay was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The burden of showing the delay was substantially justified or harmless is on the party facing exclusion. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). In determining whether the delay was substantially justified or harmless, courts consider (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

Tempe has not offered substantial justification for its untimely disclosure of Taft's declaration. As already explained, all the information in Taft's declaration was previously available and there is no reason why it could not have been included in the vocational evaluation. Attempting to cure a deficiency in a prior expert report is not sufficient justification for a later, untimely disclosure. *See Carrillo*, 2013 WL 420401, at *3 (rejecting argument late expert disclosure was justified because it was intended to cure a deficiency in prior disclosure, which the party first learned of at the expert's deposition). Thus, the fact Bessler identified a deficiency in the vocational evaluation is not substantial justification for the untimely disclosure of Taft's declaration.[7]

---

[6] The declaration also acknowledges several of the postings do not list a salary, salary range, and/or benefits available for the position. (Doc. 94–4 at 2.) Nevertheless, Taft claims "compensation for these positions is largely a function of the population and size of the respective government entity, and the scope of responsibilities of the position." (*Id.*) This claim was likewise not provided in the vocational evaluation. Instead, the vocational evaluation only references ranges for positions generally without regard population, size, or duties. (Doc. 94–5 at 18.)

[7] Furthermore, Tempe did not attempt to cure the deficiency in the vocational evaluation soon after Bessler's counsel pointed it out at Taft's deposition. Instead, Tempe disclosed Taft's declaration two months later and it did so in response to Bessler's Motion for Partial Summary Judgment. *See Luke v. Emergency Rooms, P.S.*, No. C04-5759FDB, 2008 WL 410672, at *4 (W.D. Wash. Feb. 12, 2008), *aff'd sub nom. Luke*, 323 F. App'x 496 ("The

- 23 -

Contrary to Tempe's arguments, the untimely disclosure of Taft's declaration is not harmless. First, Tempe disclosed Taft's declaration six months after his deposition, preventing Bessler from knowing which of the thousands of job postings Taft was claiming Bessler was specifically qualified for. (Doc. 98 at 4.) Tempe argues Bessler's counsel failed to ask Taft which specific job postings he based his opinions on. (Doc. 95 at 9.) It is not a party's responsibility, however, to depose an opposing party's expert to cure deficiencies in the expert's report. *See Rhodes v. Energy Marine LLC*, No. CV-14-08206-PCT-JJT, 2016 WL 8199310, at *6 (D. Ariz. Sept. 19, 2016) (rejecting argument untimely disclosure was not prejudicial because opposing party could have deposed expert to cure any claimed deficiency).

Taft's declaration was also disclosed after all pretrial deadlines set by the Court had passed. (Doc. 77.) Reopening discovery and delaying the case constitutes prejudice and is not harmless. *See Leland v. Cnty. of Yavapai*, No. CV-17-8159-PCT-SPL DMF, 2019 WL 1546998, at *3 (D. Ariz. Mar. 18, 2019), *report and recommendation adopted*, No. CV-17-08159-PCT-SPL, 2019 WL 1531874 (D. Ariz. Apr. 9, 2019) (finding untimely expert disclosure filed after all pretrial deadlines had passed was not harmless because reopening discovery and setting new deadlines for depositions would lead to increased cost, delay, and inconvenience). Thus, reopening discovery, even for the limited purpose of allowing Bessler to depose Taft a second time or present rebuttal expert testimony on Taft's declaration, will not eliminate the prejudice resulting from the untimely disclosure. "This is true even where the trial date is not imminent." *Leland*, 2019 WL 1546998, at *3. A finding of bad faith or willfulness is also not required where, as here, the exclusion does not amount to a dismissal of a claim or defense. *Yeti*, 259 F.3d at 1106. Thus, because Tempe has failed to show its untimely disclosure of Taft's declaration was substantially justified or harmless, the Court will strike Taft's declaration.

### c.   Admissibility of Taft's Vocational Evaluation

Bessler challenges Taft's qualifications and the relevance and reliability of his

Ninth Circuit has expressly disallowed such untimely filed expert evidence, including evidence presented in opposition to summary judgment motions").

vocational evaluation. (Docs. 85; 98.) Under Federal Rule of Evidence 702, trial courts must separately consider whether a proposed expert is appropriately qualified, whether his testimony is relevant, and whether his testimony is reliable. Fed. R. Evid. 702.

### i.      Qualifications

Rule 702 requires this Court to evaluate whether a proffered witness "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "The qualification standard is meant to be broad and to seek a 'minimal foundation' justifying the expert's role as an expert." *Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 776 (D. Ariz. 2017) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015–16 (9th Cir. 2004)). A minimal foundation is established if a proffered expert has years of relevant experience. *See Hangarter*, 373 F.3d at 1015–16 (finding years of experience in a relevant industry "lays at least the *minimal foundation* of knowledge, skill, and experience required" to qualify as an expert). Moreover, the lack of particularized expertise bears on the weight of the testimony, not its admissibility. *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *2 (D. Ariz. May 10, 2019).

Taft's curriculum vitae states that he has over 40 years of experience in the employment and human resources consulting fields, with an emphasis in executive recruiting, outplacement, and career transition. (Doc. 94–5 at 22.) Over the past 10 years, Taft has provided consulting and expert witness services related to employment issues including vocational evaluations, labor market research, earning capacity analysis, and job search effectiveness evaluations. (*Id.*) Taft's prior experiences included assisting displaced employees and other job seekers with career planning and job search strategy. (*Id.* at 23.) Taft has also co-authored books and published multiple articles on career strategies, earning capacity, and labor market analysis. (*Id.* at 24.) Taft's experience and familiarity with aspects of job search and attainment provide the minimal foundational knowledge in his area of expertise to qualify him as an expert.

Bessler argues Taft is unqualified because he does not know the legal standards governing mitigation of damages in employment discrimination/retaliation claims. (Docs.

85 at 5; 98 at 4.) This argument is unpersuasive. Taft's vocational evaluation examines Bessler's employability and earning capacity, not the governing legal standard. (Doc. 94–5 at 13.) Indeed, Taft's knowledge of the applicable law is immaterial because experts interpret and analyze factual evidence, not testify about the law. *United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999), *as amended on denial of reh'g* (Mar. 17, 1999).

### ii. Reliability

A trial court has broad discretion in deciding how to test an expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). When expert testimony is proffered, the testimony must be "properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments. An expert's testimony "must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." *Id.* If an expert's experience is the predominant basis for his or her testimony, "a lack of peer review, publication, and general acceptance in the field is not dispositive because the expert's opinion is the result of the expert's experience, not science." *Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 3268675, at *8 (D. Ariz. June 17, 2020); *see also Kumho Tire Co.*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

The Court finds Taft's vocational evaluation sufficiently explains the basis underlying his conclusions. As for the job search analysis, Taft relied on national and local government agencies' recommendations and requirements regarding the number of applications job seekers should submit per week. (Doc. 94–5 at 17.) Taft then compared these recommendations and requirements to Bessler's job search activities, which he derived from records of Bessler's job applications, interviews, and offers. (*Id.* at 16.) In the labor market analysis, Taft conducted research to identify job postings which Bessler was qualified for during November 1, 2018 to April 10, 2020. (*Id.* at 13–17.) An employment research firm compiled job posting data using the Department of Labor's repository of

occupational titles and job descriptions. (*Id.* at 17.) The occupational job categories included job titles such as: city manager, town manager, town administrator, director of public works, director of parks and recreation, and director of natural resources. (*Id.*) The search results were further refined by using key words relating municipal organizations. (*Id.*) Taft opined Bessler was qualified for a number of these open positions based on Bessler's education, training, skills, knowledge, and municipal government management experience, which Taft learned from Bessler's resume. (*Id.* at 13–18.) Considering the basis underlying Taft's opinions and his decades of experience in evaluating and assisting with job search strategies, the Court find's Taft's expert testimony is reliable.

Bessler argues the vocational evaluation is based on the faulty legal premise that he was required to look for employment outside of Arizona. (Doc. 85 at 9.) Bessler cites cases from other circuits for the proposition that a discharged employee is not required to relocate to mitigate damages. (*Id.*) In *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114 (4th Cir. 1983), the court explained "[t]he long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home." *Id.* at 119. Similarly, in *E.E.O.C. v. Commonwealth of Pennsylvania*, 772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Commonwealth of Pennsylvania*, 977 F.2d 738 (3d Cir. 1992), the court explained "[i]t is well settled that an ADEA claimant cannot be found to have failed to mitigate damages where he would be required to leave home for a distant location to reduce damages caused by a defendant's discriminatory acts." *Id.* at 222.

Nevertheless, the Court is unaware of any case from the Ninth Circuit which adopts a per se rule that an employee is not required to look for employment outside the state to mitigate damages. In the Ninth Circuit, the reasonableness of an employee's efforts to mitigate is a question of fact for the jury. *Jackson v. Shell Oil Co.*, 702 F.2d 197, 202 (9th Cir. 1983); *see also Cassella v. Min. Park, Inc.*, No. CV-08-01196-PHX-MHM, 2010 WL 454992, at *9 (D. Ariz. Feb. 9, 2010). The reasonableness of an employee's diligence in seeking new employment should be evaluated based on the particular circumstances and

characteristics of the employee. *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 684 (9th Cir. 1997). Together, these long-standing principles suggest an employee's duty to look for out-of-state employment to mitigate damages is a question of fact based on the particular circumstances and characteristics of the employee. Other courts have reached a similar conclusion. *See Wooten v. BNSF Ry. Co.*, No. CV 16-139-M-DLC-JCL, 2018 WL 2417858, at *5 (D. Mont. May 29, 2018), *report and recommendation adopted*, No. CV 16-139-M-DLC-JCL, 2018 WL 4462506 (D. Mont. Sept. 18, 2018) (holding whether it was reasonable for employee to relocate to another state to mitigate damages under the circumstances was question for the trier of fact); *England v. Mack Trucks, Inc.*, No. C07-5169-RBL, 2008 WL 168689, at *3 (W.D. Wash. Jan. 16, 2008) (explaining duty to mitigate only requires the employee to act reasonably and whether there was a duty to relocate was a question of fact, which precluded summary judgment).

Taft's vocational evaluation assumed Bessler would consider opportunities requiring relocation because he inquired about one position in New Glarus, Wisconsin. (Doc. 94–5 at 17.) Taft also noted Bessler had relocated multiple times for jobs in the past. (*Id.* at 14–15.) Bessler, in contrast, contends he only inquired about the position in Wisconsin because his wife's family resides there. (Doc. 84–2 at 2.) Although Bessler remains free to cross-examine Taft and present contrary factual evidence on this issue, his contentions are not enough to exclude Taft's vocation evaluation.

### iii.      Relevance

Expert testimony is relevant if it is sufficiently tied to the facts of a case such that it will aid the jury in understanding evidence or resolving a factual dispute. *Daubert*, 509 U.S. at 591. An employer raising a failure to mitigate damages defense has the burden of showing there were substantially equivalent jobs available and the employee failed to use reasonable diligence in pursuing them. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995). Taft's vocational evaluation included job postings which Taft opined Bessler was qualified for and analyzed Bessler's job search efforts. (Doc. 94–5 at 16–18.)

Bessler argues Taft's testimony is irrelevant because he did not identify specific

positions Bessler should have applied for from the date of his termination until he was re-employed by the City of Glendale on November 27, 2018. (Doc. 85 at 8.) But Tempe only contends Bessler failed to mitigate damages *after* November 30, 2018. (Docs. 94 at 16; 100 at 17.) Taft's testimony, therefore, remains relevant to the availability of jobs and Bessler's efforts in pursuing them after this date.

Bessler also argues Taft's testimony is irrelevant because he failed to specifically identify which of the 4,341 job postings were substantially equivalent to his prior position with Tempe. (Doc. 85 at 9.) An employer may rely on job postings facially comparable to the employee's prior position to support its argument that substantially equivalent employment was available. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1021 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) (holding district court did not err in relying on large number of "facially comparable" job postings in granting employer's motion for summary judgment on its failure to mitigate damages defense). Taft admitted he did not specifically identify which of the 4,341 job postings he believed were substantially equivalent to Bessler's prior job. (Doc. 84–5 at 42, 53.) The 4,341 job postings, however, included job titles similar to Bessler's former title at Tempe and were further filtered by those relating to municipal organizations. (Doc. 94–5 at 17.) The Court finds these facially comparable job postings are relevant to whether there were substantially equivalent jobs available.

Bessler finally argues Taft's opinions are irrelevant because he found substantially equivalent employment and was under no duty to continue looking for other jobs. (Doc. 85 at 11.) As explained below, there is a genuine dispute of material fact as to whether Bessler's job with the City of Glendale constituted substantial equivalent employment. Thus, Taft's testimony regarding Bessler's job search efforts after Bessler obtained employment with the City of Glendale remain relevant to Tempe's affirmative defense of failure to mitigate damages.

### iv.    Prejudice

Bessler finally argues Taft's testimony should be excluded under Federal Rule of

Evidence 403. Under Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A district court has considerable discretion in making a Rule 403 determination. *United States v. Lloyd*, 807 F.3d 1128, 1152 (9th Cir. 2015). Moreover, Rule 403 favors admissibility. *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

As mentioned above, Taft's testimony regarding available jobs and Bessler's efforts in pursuing them is probative of his efforts to mitigate damages. Nonetheless, Bessler asserts Taft's testimony will only confuse or mislead the jury because it will cause them to speculate about his efforts to mitigate damages after he found a job and was under no obligation to seek another position. (Doc. 85 at 12.) Again, whether Bessler's job with the City of Glendale constitutes "substantial equivalent" employment is a disputed issue of material fact for the jury. Thus, the Court finds the probative value of Taft's testimony is not substantially outweighed by the potential danger of confusion.

### d.    Conclusion

The Court finds Tempe untimely disclosed Taft's declaration and that such untimely disclosure was neither justified nor harmless. As for the vocational evaluation, the Court finds Taft qualified to testify as an expert witness and his testimony and opinions to be reliable and relevant to this case. The Court further finds the probative value of Taft's testimony is not substantially outweighed by the dangers enumerated in Rule 403. Accordingly, the Court will partially grant Bessler's *Daubert* motion as it relates to Taft's untimely declaration but deny the motion as to the vocational evaluation.

### 2.    Affirmative Defense of Mitigation of Damages

An ADEA plaintiff has a duty to mitigate damages by exercising reasonable diligence in seeking other suitable employment after termination. *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1345 (9th Cir. 1987). The employer bears the burden of showing the plaintiff failed to mitigate damages. *Odima*, 53 F.3d at 1497. To satisfy this

1   burden, the employer must show: (1) there were substantially equivalent jobs available,

2   which the employee could have obtained; and (2) the employee failed to use reasonable

3   diligence in pursuing them. *Id.* Because the same facts guide the evaluation of the parties'

4   cross-motions for summary judgment, the Court will consider them in tandem.

5                      **a.      Availability of Substantially Equivalent Employment**

6                "Substantially equivalent employment is that which affords virtually identical

7   promotional opportunities, compensation, job responsibilities, working conditions, and

8   status" as the employee's prior employment. *Cassella*, 2010 WL 454992 at *5 (quoting

9   *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir.1990)) (internal quotation marks

10  omitted). Evidence of job postings consisting of job titles, employers, and location can

11  create a genuine issue of material fact sufficient to defeat an employee's motion for

12  summary judgment on this affirmative defense. *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d

13  1015, 1028 (D. Ariz. 2014), *order clarified*, No. CV-12-01543-PHX-JAT, 2014 WL

14  11514328 (D. Ariz. Nov. 18, 2014), *and aff'd in part sub nom. Cheeks v. Gen. Dynamics*

15  *C4 Sys. Inc.*, 684 F. App'x 658 (9th Cir. 2017). On the other hand, an employer is not

16  entitled to summary judgment if it fails to specifically explain how the job postings have

17  virtually identical promotional opportunities, job responsibilities, or working conditions as

18  the employee's previous job. *See id.* at 1027–28 (citing *Cassella*, 2010 WL 454992, at *6);

19  *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 968 (D. Haw. 2010).

20               Tempe produced sufficient evidence to create a genuine issue of material fact

21  regarding the availability of substantially equivalent jobs. Tempe produced 4,341 job

22  posting from November 1, 2018 to April 10, 2020. (Doc. 94–5 at 18.) These job postings

23  contained job title, employer, location, and general description of the employment. (*Id.*)

24  Tempe did not, however, go any further to explain how these job postings have virtually

25  identical promotional opportunities, compensation, job responsibilities, working

26  conditions, or status as Bessler's prior job. (*Id.*) Accordingly, there is a triable issue on the

27  availability of substantially equivalent jobs, which precludes summary judgment in favor

28  of Tempe on its affirmative defense of failure to mitigate damages.

1

2
<br>

### b.      Reasonable Diligence

"A wrongfully discharged employee is required to make only a reasonable effort to obtain interim employment, and is not held to the highest standard of diligence." *Kawasaki Motors Mfg. Corp., U.S.A. v. N.L.R.B.*, 850 F.2d 524, 527 (9th Cir. 1988). The reasonableness of an employee's diligence in seeking alternative employment is a question of fact and should be evaluated in light of the employee's particular circumstances and characteristics. *Pape Lift*, 115 F.3d at 684. An employee's efforts can be deemed reasonable during certain time periods but not others. *Cassella*, 2010 WL 454992, at *6. There are two time periods at issue here: (1) the time between Bessler's termination until he accepted a job with the City of Glendale (November 2 to November 27, 2018); and (2) the time thereafter. The Court will consider each of these periods separately.

### i.      November 2 to November 27, 2018

Bessler argues there is no dispute he made reasonable efforts to find substantially equivalent employment between November 2 to November 27, 2018. (Doc. 84 at 9.) During this time period, Bessler applied for 11 jobs and had five interviews for municipal government administration positions. (Doc. 94–5 at 16.) Taft admitted Bessler's efforts during this initial time period were reasonable. (Doc. 84–5 at 12.) Because there is no dispute Bessler's efforts to find comparable employment during this time period were reasonable, the Court will grant Bessler's motion as to this time period.

### ii.      November 27, 2018 to Present

Bessler argues he was not under a duty to continue looking for employment after accepting a job with the City of Glendale. (Doc. 84 at 12.) Bessler cites cases from other circuits holding an employee who obtains similar employment, even at a lower salary, is not required to continue looking for higher paying employment. *See N.L.R.B. v. Pepsi Cola Bottling Co. of Fayettville*, 258 F.3d 305, 315 (4th Cir. 2001); *Tubari Ltd., Inc. v. N.L.R.B.*, 959 F.2d 451, 458 (3d Cir. 1992); *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1274 (4th Cir. 1985); *J. H. Rutter Rex Mfg. Co. v. N. L. R. B.*, 473 F.2d 223, 242 (5th Cir. 1973). But Bessler cites no Ninth Circuit decisions addressing this issue. A terminated

employee has a duty to pursue substantially equivalent employment, not just any work. *Pape Lift*, 115 F.3d at 683 (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)). Indeed, the Ninth Circuit has held that even after a period of unsuccessfully looking for work, an employee is not required to lower his sights and take a lower paying job. *Id.*; *see also Karl v. City of Mountlake Terrace*, No. C-09-1806-RSL, 2011 WL 1304885, at *2 (W.D. Wash. Apr. 4, 2011). The reasonableness of an employee's mitigation efforts is ultimately a question of fact for the jury. *Jackson v. Shell Oil Co.*, 702 F.2d 197, 202 (9th Cir. 1983). Thus, whether Bessler should have continued looking for higher paying jobs is a question of fact and depends on whether his employment with the City of Glendale was substantially equivalent to his prior job.

There is a factual dispute as to whether Bessler's job with the City of Glendale is substantially equivalent to his previous job with Tempe. Both jobs involved employment with municipal government administration and allowed Bessler to contribute to ASRS. (Doc. 84 at 9–10.) Unlike Bessler's prior job, however, his employment with the City of Glendale was temporary.[8] (Docs. 84 at 3; 94 at 5.) And although Bessler is responsible for supervising City of Glendale's engineering department, as the Director of Tempe's PWD he oversaw more divisions, including water utilities, field operations, transportation, and engineering. (Docs. 94 at 11; 99 at 3.) Finally, although the parties agree Bessler's salary at Tempe was higher than his pay at the City of Glendale, they dispute the amount of his ending salary at Tempe.[9] (Docs. 94 at 2; 99 at 3.) Because there is a factual dispute as to whether Bessler's new job constitutes substantially equivalent employment, a determination as to the reasonableness of Bessler's efforts in looking for other employment

---

[8] At oral argument, Bessler's counsel indicated Bessler would be promoted to a fill-time, permanent position as the Director of City of Glendale's Engineering Department, effective July 17, 2021. Unofficial Transcript of Oral Argument at 5, *Bessler v. City of Tempe, et al.*, No. CV-19-04610-PHX-MTL (Unofficial Transcript of Hearing July 8, 2021).

[9] Tempe argues Bessler's ending salary was over $181,000, plus benefits as indicated on his 2018 W-2 form. (Docs. 94 at 4; 94–2 at 34.) Tempe also argues this amount does not reflect Bessler's entire annual salary because he did not work for Tempe all of 2018. (Doc. 94 at 4.) In contrast, Bessler argues the $180,552.29 reflected in his 2018 W-2 includes a $34,567 payout of accrued vacation time paid by Tempe when Bessler's employment ended in 2018. (Doc. 99 at 3.) Bessler's 2019 W-2 from the City of Glendale indicates he made $124,628.21 that year. (Doc. 94–5 at 39.)

is improper on summary judgment. Accordingly, the Court will deny the parties' cross-motions for summary judgment as to the time period after November 27, 2018.

## IV.  CONCLUSION

To summarize, the Court finds Bessler's ADEA retaliation claim will proceed to trial. At trial, Tempe's vocational expert will be permitted to testify to his expert opinions as they relate to the vocational evaluation. Tempe's vocational expert will not be permitted to testify as to the information contained in his declaration. Specifically, the vocational expert may not testify regarding the individual job postings Bessler was qualified for. The vocational expert will also not be allowed to testify regarding his contention that compensation for the job postings without a salary listed is largely a function of population and size of the government entity and scope of responsibilities of the position. Finally, the issue of Tempe's affirmative defense of failure to mitigate damages remains as to the time period after November 27, 2018.

Accordingly,

**IT IS ORDERED denying** Defendant's Motion for Summary Judgment (Doc. 100).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Disqualify or Limit the Testimony of Defendant's Vocational Expert (Doc. 85) is **granted in part** and **denied in part**. Plaintiffs' Motion is **granted** in favor of Plaintiff as to the exclusion of the untimely expert declaration. Plaintiff's Motion is **denied** as to the reminder of Defendant's expert's testimony.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment Regarding Affirmative Defense of Mitigation of Damages (Doc. 84) is **granted in part** and **denied in part**. Plaintiff's Motion is **granted** in favor of Plaintiff as to the time period between November 2, 2018 to November 27, 2018. Plaintiff's Motion is **denied** as to the time period after November 27, 2018.

///

///

- 34 -

1

2

**IT IS FINALLY ORDERED** that, by separate order, the court will set a trial-setting conference in this matter.

3

Dated this 22nd day of July, 2021.

4

5

6

*Michael T. Liburdi*

7

Michael T. Liburdi
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28